[No. 26802. Department Two. March 8, 1938.]

WOODROW M. FISHER, *Respondent,* v. DAN THUMLERT, *Appellant,* CHARLES M. BRYANT *et al., Interveners.*[1]

[1]Reported in 76 P. (2d) 1018.

*Cheney & Hutcheson, Walter J. Robinson, Jr.,* and *Dwight N. Stevens,* for appellant.

*Charles F. Bolin, E. L. Bennett,* and *Arthur Kirschermann,* for respondent.

ROBINSON, J.—On October 15, 1936, John L. Torrens entered into a written contract to sell the 1936 apple crop from one of his orchards to Charles M. Bryant. At the foot of the contract was a pencil notation: "Cash when apples are billed." It seems, however, that the parties agreed that the apples were to be washed and prepared for market by Bryant and paid for when sold. They were delivered to Bryant and stored in a warehouse rented by Bryant called the "Richey-Gilbert Warehouse."

On October 31, 1936, Bryant borrowed $450 from Dan Thumlert. The loan was evidenced by Bryant's eight per cent note, payable on or before December 1, 1936, and secured by a chattel mortgage upon property described as follows:

"One Bryant Fruit washer and 3,000 boxes of Winesaps and Rome Beauty apples located in the Bryant Warehouse at Zillah, Washington."

The mortgage was in due form and was filed with the auditor of Yakima county on November 9th.

Subsequently, Torrens assigned his contract to Fisher, reciting that the assignment was made for "the purpose of collection." Fisher instituted an action against Bryant to recover the purchase price of the apples. On January 5, 1937, Bryant, Torrens and

Fisher, in an effort to compromise that action, entered into a written contract in which it was agreed that Bryant and Fisher should sell the apples and Fisher should apply the proceeds in the manner therein specified, including the payment of the Thumlert mortgage.

While Fisher was arranging to sell the apples, Thumlert started to foreclose his mortgage by summary notice and sale. Fisher then instituted the present suit, removing the foreclosure proceedings to the superior court and praying that the mortgage be declared wholly invalid as to the apples for lack of sufficient description. Thumlert cross-complained for foreclosure. The sale of the apples was completed by stipulation of the parties and the proceeds deposited in the registry of the court to await the result of the action. Bryant was adjudicated a bankrupt on February 2, 1937, and Janeck, his trustee, intervened in the action and claimed the proceeds as assets of the bankrupt's estate.

Fisher, by amendment, set up the additional contention that the mortgage was invalid, on the ground that, at the time of the purchase of the apples by Bryant, Bryant was acting as a commission merchant and did not have a license to act as such under the laws of the state of Washington; that the contract by which he purchased the apples from Torrens was wholly void; and that the mortgage given by Bryant to Thumlert was void for the same reason. He further took the position that the three-party contract between himself, Torrens, and Bryant, entered into on January 5, 1937, was a mere compromise agreement which Bryant had breached, and that it was no longer of any force and effect.

Upon the trial of the case, the court entered findings of fact, conclusions of law, and decree denying the foreclosure of the mortgage as to the apples, on the ground that the sale to Bryant was void, since Bryant

did not have a license to act as a commission merchant; and, being void, Bryant had no interest or title in the apples which he could mortgage to Thumlert. The decree directed that the proceeds of the sale of the apples deposited in the registry of the court be turned over to Torrens, less certain deductions not material here. The decree further provided that Thumlert should have judgment against Bryant for interest, costs, and attorney's fees, and foreclosed the mortgage as to the washing machine. Janeck, the intervening trustee in bankruptcy, was dismissed from the action. Thumlert alone prosecutes this appeal.

The good faith of the appellant in taking the mortgage was in no way impeached or called into question. We think the lower court erred in holding it invalid as to the apples. While it was unlawful for Bryant to act as a commission merchant without a license, as required by statute, it does not follow that his contract with Torrens was void, in the sense that it was a nullity.

Professor Williston, in his work on "Contracts," Revised Edition, § 1630, says:

"It is commonly said that illegal bargains are void. This statement, however, is clearly not strictly accurate. It is more correct to say that 'a party to an illegal bargain generally can neither recover damages for breach thereof, nor, by rescinding the bargain, recover the performance that he has rendered thereunder or its value.' . . .

"To deny a wrongdoer damages or the return or value of his performance, though an equally guilty defendant thereby escapes punishment and may be enriched, tends to diminish the number of illegal bargains. To go farther and assert that all unlawful agreements are *ipso facto* no contracts and void is opposed to many decisions and unfortunate in its consequences, for it may protect a guilty defendant from paying damages to an innocent plaintiff. Doubtless a statute may and sometimes does make a bargain absolutely

void, but even though a statute so states in terms, 'void,' has sometimes been held to mean 'voidable,' and unless no other conclusion is possible from the words of a statute it should not be held to make agreements contravening it totally void."

Page on the Law of Contracts says, at § 688:

"If the statute which forbids the act and imposes the penalties discloses a legislative intent to provide completely for its violation, the courts do not add an additional penalty which will affect other persons, often innocent, by making contracts void."

The texts quoted are upheld by a great number of decided cases. Perhaps, the leading case is *Harris v. Runnels,* 53 U. S. (12 How.) 79, 13 L. Ed. 901. *Ewell v. Daggs,* 108 U. S. 143, 27 L. Ed. 682, 2 S. Ct. 408, is typical of cases wherein the word "void" is construed to mean "voidable" only.

In *Mann v. United Motor Boston Co.,* 226 Mass. 495, 116 N. E. 239, it is said that, while it is well-settled that the law will not aid either party to an illegal contract to enforce it against the other, and after such a contract has been executed and carried into effect, a party thereto who has paid money or delivered property in pursuance of its terms cannot recover back what he has parted with, this well-established doctrine is not to be invoked against an innocent purchaser for value without notice of the illegal transaction. See, also, *Doney v. Laughlin,* 50 Ind. App. 38, 94 N. E. 1027, and the very recent case of *Sajor v. Ampol, Inc.,* 275 N. Y. 125, 9 N. E. (2d) 803.

Our own early cases, *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67, 31 Pac. 327, and *Edison General Electric Co. v. Canadian Pac. Nav. Co.,* 8 Wash. 370, 36 Pac. 260, 40 Am. St. 910, 24 L. R. A. 315, while not directly in point, are in harmony with the principle involved. See, also, *Way v. Pacific Lumber & Timber Co.,* 74 Wash. 332, 133 Pac. 595, 49 L. R. A. (N. S.) 147,

and *Ferguson-Hendrix Co. v. Fidelity & Deposit Co.,* 79 Wash. 528, 140 Pac. 700.

■ We find nothing in chapter 194, Laws of 1925, Ex. Ses., p. 586, as amended by chapter 67, Laws of 1933, p. 342, requiring the licensing of commission merchants, which leads us to think that the legislature intended that a contract made by an unlicensed commission merchant should be an absolute nullity. Disobedience of the act is made a misdemeanor, and, as we have seen, the law will not enforce contracts made in violation of it at the suit of either of the parties. In our opinion, such contracts are not absolute nullities, but are merely voidable, and the commission merchant, upon delivery, receives a voidable title. That being true, Rem. Rev. Stat., § 5836-24 [P. C. § 6227-24], applies, for the word "buyer," as therein used, includes a mortgagee. (§ 5836-76 [P. C. § 6227-76].)

"Where a seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title." Rem. Rev. Stat., § 5836-24.

, ■ Furthermore, even if the contract was wholly null and void, we think that Torrens, the real plaintiff in this action, would be estopped to assert the invalidity of the mortgage. He not only transferred the possession of the apples to Bryant for the purpose of resale and permitted them to be placed in a warehouse rented by Bryant, and permitted Bryant to hold himself out to the public as the owner of the apples, but he executed a written document which, according to its terms, vested title to the apples in Bryant. Under these circumstances, we think that he is estopped to assert, as against Thumlert, that Bryant was not the owner of the apples.

We quote from 21 C. J. 1172:

"Where the true owner of property holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner or person having such apparent power of disposition, they will be protected. However indisputable were the intentions of the owner not to surrender his ownership, when he has surrendered the possession and exhibited the person who has that possession to the world as one having the power to dispose of the property, he will not be heard against an honest buyer who had acted upon the confidence imprudently reposed by the owner. In such cases the rights of such third persons do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing as against them the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

See, also, *Fuller & Co. v. Longmire,* 97 Wash. 254, 166 Pac. 623, 7 A. L. R. 674; *Willett v. Central Yakima Ranches Co.,* 126 Wash. 587, 219 Pac. 20.

The principle under discussion has received statutory recognition in Rem. Rev. Stat., § 5836-23 [P. C. § 6227-23]:

"(1) Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell. . . ."* (Italics ours.)

▮ The respondent renews the contention made in the lower court that the mortgage was invalid for want of a sufficiently definite description. We think there is no merit in this contention. It is undisputed that

the mortgage was intended to cover a lot of apples which Bryant had purchased from Torrens. There were only two lots of apples in Bryant's warehouse, the Torrens lot and the Umpta lot. The Torrens lot was the only lot containing Rome Beauties, being half Rome Beauties and half Winesaps. The apples were marked and could be easily located. The description was sufficient as between the parties, and it sufficiently appears in the record that nobody was misled. It is a well-settled rule that a description which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property is legally sufficient. *Community State Bank v. Martin,* 144 Wash. 483, 258 Pac. 498.

The respondent also contends that the mortgage constituted an unlawful preference, within the meaning of the national bankruptcy act, as it was given within four months before the filing of the petition in bankruptcy. Whether the respondent has any right to raise this contention, is more than doubtful. In any event, it is without merit. The mortgage was given to secure a contemporaneous loan. The transaction in no way depleted the assets of Bryant and did not constitute the giving of an unlawful preference, within the meaning of § 60 (b) of the bankruptcy act. *Dean v. Davis,* 242 U. S. 438, 61 L. Ed. 419, 37 S. Ct. 130.

As neither Bryant nor Janeck, his trustee in bankruptcy, has appealed from the judgment, we are not concerned with what rights they may have in the matter.

The judgment appealed from is reversed, and the lower court is directed to enter a decree of foreclosure in accordance with the prayer of the appellant's cross-complaint.

STEINERT, C. J., BLAKE, BEALS, and MILLARD, JJ., concur.