[Nos. 3296-5-III; 3394-5-III. Division Three. April 8, 1980.]

ST. JOHN FARMS, INC., *Respondent,* v. D. J. IRVIN COMPANY, INC., ET AL, *Appellants.*

SIEVEKE FARMS, INC., ET AL, *Respondents,* v. D. J. IRVIN COMPANY, INC., ET AL, *Appellants.*

*Robert B. Henderson* and *Sharpe, Ganz & Henderson,* for appellants.

*Kelly N. Brown, Irwin, Friel & Myklebust, Gary J. Libey, Nuxoll, McBride & Libey,* and *J. D. Frazier,* for respondents.

GREEN, C.J.—In two separate actions, plaintiff growers sought to recover amounts allegedly owed for lentils delivered to D. J. Irvin Co. Irvin counterclaimed for damages

based on breach of contract. All parties appeal from portions of the summary judgment entered by the trial court. We have consolidated the appeals.

Two issues are presented: (1) Does Irvin's failure to obtain a license as a dealer in agricultural products allow the growers to avoid their contracts with Irvin? and (2) If the contracts may be avoided, what does Irvin owe plaintiffs for the delivered lentils?

D. J. Irvin Co. is a corporation that deals in agricultural commodities. In early 1977, it contracted with plaintiffs for the purchase of specified amounts of lentils for future delivery at a price of $18 per hundred pounds. Based on those contracts, Irvin committed itself on future contracts with others for delivery of that amount of lentils. Due to drought, the lentil crop failed that year, and plaintiffs delivered only a fraction of the promised amount. With few exceptions, Irvin never paid for the lentils that were delivered. It refused to pay claiming that, since plaintiffs did not deliver the promised quantity of lentils, they breached their contracts and owed Irvin the difference between the contract price and the higher price Irvin had to pay for lentils on the market to cover its resale agreements. Consequently, Irvin reduced the amount claimed to be owed by plaintiffs for breach of their contracts by the value of the delivered lentils.

About this time, plaintiffs discovered that Irvin was not a licensed dealer as required by RCW 20.01.040.[1] Although Irvin had engaged in the business of buying and selling agricultural products for several years, it was not aware of this statute. Therefore, when plaintiffs instituted this action for the value of the delivered lentils, they alleged that their contracts with Irvin were illegal and not enforceable because the corporation failed to comply with the

---

[1] This chapter covers those persons or entities dealing in agricultural products. RCW 20.01.040 provides:

"On or after [the effective date of this chapter] no person shall act as a commission merchant, dealer, broker, cash buyer or agent without a license."

licensing requirements. Each plaintiff sought to be compensated for the delivered lentils at the market price on the day of delivery, *i.e.*, $45 per hundred pounds instead of the contract price of $18. Irvin answered, admitted it was unlicensed, but denied plaintiffs' allegations and counterclaimed for damages based on plaintiffs' failure to deliver the amounts promised in their contracts.

The trial court granted summary judgment in favor of plaintiffs and allowed a recovery for lentils delivered computed at about $21 per hundred pounds, the price at which Irvin had resold the lentils. Irvin's counterclaims were dismissed. Plaintiffs and Irvin appeal.

First, Irvin contends that its violation of RCW 20.01.040 does not render its contracts with the plaintiffs unenforceable. We disagree.

In *Fisher v. Thumlert,* 194 Wash. 70, 75, 76 P.2d 1018 (1938), the court reached a contrary conclusion in construing the predecessor statute.[2] The court said:

> Disobedience of the act is made a misdemeanor, and, as we have seen, the law will not enforce contracts made in violation of it at the suit of either of the parties.

The present statute was similarly construed in *Kilthau v. Covelli,* 17 Wn. App. 460, 463, 563 P.2d 1305, *review denied,* 89 Wn.2d 1010 (1977).[3]

This rule tends to discourage illegal bargains and encourages compliance with the comprehensive regulatory scheme. *Fisher v. Thumlert, supra* at 73. That statutory

---

[2] In *Fisher,* the court held that a sale and delivery of apples to an unlicensed commission merchant passed a voidable title allowing the commission merchant to pass title to a third party who did not have knowledge of the merchant's status. As a result, a good faith mortgagee of the merchant was entitled to foreclose its mortgage on the apples and the seller was estopped to claim the defense of illegality as to such foreclosure. Here, we are concerned only with an action between the seller and the commission merchant or dealer.

[3] This same rule has been applied in other areas. *E.g., Sherwood v. Wise,* 132 Wash. 295, 232 P. 309 (1925) (unlicensed architects); *Lund v. Bruflat,* 159 Wash. 89, 292 P. 112 (1930) (unlicensed plumber); *Hederman v. George,* 35 Wn.2d 357, 361, 212 P.2d 841 (1949) (securities broker).

scheme was intended to regulate in the public interest those dealing in agricultural products, not to raise revenue. RCW 20.01; *State v. Bowen & Co.,* 86 Wash. 23, 149 P. 330 (1915). Since the *Fisher* court construed RCW 20.01, the legislature has rewritten and reenacted the statute several times. These reenactments, without substantial change, evidence the legislature's agreement with the holding in that case. 2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 49.09, p. 256–57 (4th ed. 1973); *Yakima Valley Bank & Trust Co. v. Yakima County,* 149 Wash. 552, 556–57, 271 P. 820 (1928). Consequently, until *Fisher* is overturned, it remains the law in this state and Irvin's counterclaim was properly dismissed.

We are aware, as Irvin points out in its brief, that some jurisdictions have reached a different conclusion in construing similar statutes relating to architects. For example, *Robken v. May,* 84 Nev. 433, 442 P.2d 913, 914 (1968), and *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 525, 530 (1976), hold that if a statute provides for sanctions other than the forfeiture of a right to sue, an unlicensed architect is not barred from enforcing a contract for his services. However, the Washington rule as to unlicensed architects is to the contrary. *Sherwood v. Wise,* 132 Wash. 295, 232 P.2d 309, n.2 (1925). If the rule is to be changed and applied to dealers in agricultural commodities, as urged by Irvin, it must be done by our Supreme Court or the legislature.

Irvin urges that equitable principles be applied to deny plaintiffs' defense of illegality, as illustrated by the court's language in *Southfield v. Barrett,* 13 Cal. App. 3d 290, 294, 91 Cal. Rptr. 514, 516 (1971):

> Despite the illegality of the contract, plaintiff should not be denied relief. The rule requiring courts to withhold relief under the terms of an illegal contract is based on the rationale that the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice as between the parties. . . . However, the rule is not an inflexible one to

be applied in its fullest rigor under any and all circumstances. A wide range of exceptions has been recognized. . . . Where the public cannot be protected because the transaction has already been completed, no serious moral turpitude is involved, defendant is the one guilty of the "greatest moral fault," *and* defendant would be unjustly enriched at the expense of plaintiff if the rule were applied, the general rule should not be applied. . . . In such circumstances, equitable solutions have been fashioned to avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.

(Citations omitted. Italics ours.) In that case, plaintiff had advanced $40,000 to defendant and agreed to market defendant's hay crop on commission. After partial performance, defendant refused to make further deliveries of hay and plaintiff brought an action for the return of some of the advanced money. Defendant raised the defense of illegality. While recognizing the continued viability of the defense, the court, under the quoted equitable principles, allowed plaintiff to recover. Unlike the instant case, defendant would have been unjustly enriched because he would have retained a substantial benefit—about $20,000. Similar applications of this principle are found in *Rosasco Creameries, Inc. v. Cohen,* 276 N.Y. 274, 11 N.E.2d 908 (1937); *Hiram Ricker & Sons v. Students Int'l Meditation Soc'y,* 342 A.2d 262, 268 (Me. 1975); *Nevada Equities, Inc. v. Willard Pease Drilling Co.,* 84 Nev. 300. 440 P.2d 122 (1968); *Ryan v. KVL, Inc.,* 198 Wash. 459, 469–70, 88 P.2d 836 (1939); Restatement of Contracts § 600 (1932). Generally, these principles have been applied in instances where one party to the illegal bargain would be allowed to retain a benefit resulting in unjust enrichment.

Even if we were to apply the *Southfield* principle here, it would not aid Irvin. No benefit was conferred upon plaintiffs by Irvin that should be restored to it. Instead, Irvin seeks to affirmatively enforce a bargain rendered illegal by its failure to obtain a license. Neither *Fisher* nor *Southfield* would permit such enforcement.

Second, both parties assign error to the trial court's award to plaintiffs of about $21 per hundred pounds for the lentils delivered to Irvin in partial performance of the contract. Plaintiffs argue that since the contract is illegal they should be entitled to recover the market value of the lentils on the date of delivery, a value of more than double the contract price. On the other hand, Irvin contends that plaintiffs should either be awarded nothing for their lentils or at the most not more than the contract price of $18 per hundred pounds. The trial court's award was based upon the amount Irvin received upon its resale of the lentils.

■ Irvin relies on *Main v. Taggares,* 8 Wn. App. 6, 504 P.2d 309 (1972), in which the court held that a seller could not recover that portion of a real estate commission he had already paid to an unlicensed broker for procuring a purchaser for his property. This holding is supported by the general rule which denies a recovery by either party to an illegal contract. Restatement of Contracts § 598 (1932); Restatement of Restitution § 45 (1937). However, exceptions exist to this general rule. For example, the Restatement of Contracts at section 599 (1932), provides that where the illegality of the bargain is due to:

(a) facts of which one party is justifiably ignorant and the other party is not, or

(b) statutory or. executive regulations of a minor character relating to a particular business which are unknown to one party, who is justified in assuming special knowledge by the other party of the requirements of the law,

the ignorant party may recover for any performance he has rendered. *See* Restatement of Contracts § 599, Comment *a* (1932); D. Dobbs, *Remedies* § 13.5 (1973); and *Gold Bond Stamp Co. v. Bradfute Corp.,* 303 F. Supp. 532, 542 (S.D.N.Y. 1969). Here, plaintiffs reasonably assumed that Irvin had complied with all of the prerequisites to doing business as a dealer in agricultural products in the state of Washington. In these circumstances, RCW 20.01's purpose in protecting the public from financially irresponsible dealers would not be furthered by denying a recovery to

plaintiffs. Instead, unjust enrichment would result if Irvin is allowed to keep the delivered lentils without paying for them. Thus, the trial court properly recognized the plaintiffs' right to a recovery for the lentils delivered under the contract.

The question, then, is: What is the correct measure of this recovery? In our view, the recovery should be limited to $18 per hundred pounds as provided in the contract. At the time plaintiffs delivered the lentils to Irvin, they expected to be paid the price expressed in the contract. To the extent of their performance, the contract was executed and they should recover the contract price. D. Dobbs, *Remedies* § 13.5, p. 999 (1973). To allow plaintiffs to recover more than the contract price for the delivered lentils would result in a windfall to them, and they would be unjustly enriched.

Accordingly, we affirm the summary judgment in dismissing Irvin's counterclaim but remand for redetermination of the amount of plaintiffs' recovery for the delivered lentils.

McINTURFF and ROE, JJ., concur.

Reconsideration denied May 9, 1980.

Review denied by Supreme Court July 18, 1980.