[No. 4336-3-III.   Division Three.   December 15, 1981.]

HEART SEED COMPANY, INC., *Appellant,* v. ARTHUR W. CHAMNES, *Respondent.*

*William D. Symmes, Jeffrey L. Supinger,* and *Witherspoon, Kelley, Davenport & Toole,* for appellant.

*Lawrence Cary Smith,* for respondent.

GREEN, J.—Heart Seed Company, Inc., of Fairfield, Washington, brought this action against Arthur Chamnes, d/b/a Chamnes Seed Company of Madras, Oregon, seeking damages for breach of contract. It is alleged that in March and April of 1979, Heart Seed ordered quantities of Kentucky bluegrass seed from Chamnes to be delivered in September and November/December of 1979, at a predetermined cash price. Heart Seed alleges it had to purchase other seed at a higher price, to its damage, because Chamnes failed to deliver. Chamnes moved for dismissal on the ground Heart Seed, although a licensed seed dealer and processor under RCW 15.49, was not licensed as an agricultural dealer as required by RCW 20.01. From an order granting the motion for dismissal Heart Seed appeals.

The sole question presented is whether a dealer and processor of seed who is properly licensed under the Washington State Seed Act, RCW 15.49, must also be licensed as an agricultural dealer under RCW 20.01. We answer in the negative and reverse.

In 1959, the legislature enacted RCW 20.01 relating to commission merchants, dealers, brokers, buyers and agents dealing in agricultural products. That act provides that no person, including a corporation, shall act in any of these capacities without a license. RCW 20.01.040. (The act imposes various requirements upon such licensed operators, and enforcement duties upon the Director of Agriculture.) Violation of the act is a gross misdemeanor. RCW 20.01-.460.

In 1969, the legislature enacted the "Washington State Seed Act". RCW 15.49. This act specifically covers "seeds of grass", RCW 15.49.050, and undertakes to establish detailed standards for labeling, the disposition of screenings (prohibited or restricted noxious weed seeds), and record keeping. The Director of Agriculture is directed to administer, enforce and carry out the provisions of the act. RCW

15.49.310. In adopting regulations and promoting uniformity, the Director is to be guided by officially recognized associations or regulations under the federal Seed Act, 7 U.S.C. § 1551. RCW 15.49.310. Violation of this act is also a crime. RCW 15.49.430.

Chamnes takes the position that although Heart Seed is licensed as a dealer and processor under the seed act, it must also be licensed as an agricultural dealer under RCW 20.01. Since it is not licensed as an agricultural dealer, Chamnes argues the contract is unenforceable and the dismissal was properly ordered based on *St. John Farms, Inc. v. D.J. Irvin Co.*, 25 Wn. App. 802, 609 P.2d 970, *review denied*, 94 Wn.2d 1002 (1980). To the contrary, Heart Seed contends since it was licensed under the seed act, an agricultural dealer's license is not required. We agree.

The seed act states that a "'[d]ealer' means any person who distributes." RCW 15.49.240. "'Distribute' means to import, consign, offer for sale, hold for sale, sell, barter, or otherwise supply seed in this state." RCW 15.49.230. A license is not required of "any grower selling seeds of his own production exclusively." RCW 15.49.380. Implicit in these definitions is that a seed dealer is engaged in the business of buying and selling seeds.

An agricultural "dealer" under RCW 20.01.010(7) means:

> [A]ny person . . . who . . . contracts for . . . any agricultural product, or who . . . agrees to buy any agricultural product from the consignor thereof for sale or processing and includes any person, other than one who acts solely as a producer, who retains title in an agricultural product and delivers it to a producer for further production or increase . . .

Such a dealer is required to have a license, RCW 20.01.040, and be bonded, RCW 20.01.210.

It is readily apparent the two acts cover the same activity.[1] The question, then, is whether the subsequently

---

[1] For purposes of this opinion only, we are assuming grass seed is an agricultural product as defined in RCW 20.01.010:

enacted seed act governs over the earlier act generally covering dealers in agricultural products. Did the legislature intend the Director of Agriculture to issue two licenses for essentially the same activity? We think not.

██ The rule controlling this situation was stated in *Wark v. Washington Nat'l Guard,* 87 Wn.2d 864, 867, 557 P.2d 844 (1976):

> It is the law in this jurisdiction, as elsewhere, that where concurrent general and special acts are in pari materia and cannot be harmonized, the latter will prevail, unless it appears that the legislature intended to make the general act controlling. *State ex rel. Phillips v. State Liquor Control Bd.,* 59 Wn.2d 565, 369 P.2d 844 (1962); *Airway Heights v. Schroeder,* 53 Wn.2d 625, 335 P.2d 578 (1959); 82 C.J.S. *Statutes* § 369 (1953); 2A C. Sands, *Statutes and Statutory Construction* § 51.05 (4th ed. 1973).
>
> It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act and thus conflict with it, the special act will be considered as an exception to, or qualification of, the general statute, whether it was passed before or after such general enactment.

*See State v. Green,* 91 Wn.2d 431, 438–39, 588 P.2d 1370 (1979).

Applying this rule here, we find the subsequently enacted seed act, being specific and detailed as to seed dealers, must prevail over the more general agricultural dealer's act, RCW 20.01. We do not believe the legislature intended Heart Seed to obtain two licenses for the same activity. Consequently, Heart Seed, having been licensed as a dealer in grass seeds, is entitled to pursue its action against Chamnes for breach of contract.[2]

---

    (3) "Agricultural product" means any unprocessed horticultural, vermicultural and its byproducts, viticultural, berry, poultry, poultry product, grain, bee, or other agricultural products, . . .
Heart Seed contends grass seed is not such a product. We need not decide this question in this case; in fact, the record before us may not be adequate for a decision on this question.

[2]Chamnes argues that since seed dealers are not specifically exempted by RCW 20.01.030, and since RCW 20.01 has been amended since the passage of the

Reversed and remanded.

McINTURFF, C.J., concurs.

ROE, J. (concurring)—The purposes requiring proper licensing were accomplished and there was no need for dual licensing under RCW 15.49 and RCW 20.01.

Reconsideration denied January 14, 1982.

Review denied by Supreme Court March 26, 1982.

seed act, it must be assumed the legislature did not intend to exempt seed dealers from the provisions of that act. We disagree. The seed act did not exist when RCW 20.01 was enacted. When the seed act was enacted, the legislature by that act created the exemption. *See Wark v. Washington Nat'l Guard, supra.* Neither is *St. John Farms, Inc. v. D.J. Irvin Co., supra,* controlling. In that case, D. J. Irvin Company was an unlicensed commission merchant; here, Heart Seed is a licensed seed dealer.