**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| DAN ROTH, individually and TERESA GARCIA, as wife of DAN ROTH, and their marital community; PLURALSTACK LLC, a Washington limited liability company, | No. 85508-5-I |
| Appellant/Cross-Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MELISSA FRENCH, an individual, | |
| Respondent/Cross-Appellant. | |

MANN, J. — Melissa French sued Dan Roth and his company Pluralstack LLC (Pluralstack) alleging multiple claims, including breach of contract and unjust enrichment, related to transactions concerning vendor contracts with French's employer Kaiser Permanente. A jury found that there was no contract or agreement between French and Roth or Pluralstack, but it awarded French $1,600,000 on her claim of unjust enrichment. Roth appeals and argues the trial court erred in declining to give his proposed jury instructions and special verdict form based on his affirmative defenses of illegality, in pari material, and unclean hands. Roth also argues that the trial court erred in awarding prejudgment interest. We remand to strike the award of prejudgment interest but otherwise affirm.

I

A

French and Roth became friends while working together at Microsoft between 2010 and 2012. They often had lunch and discussed going into business together. French and Roth both left Microsoft for other jobs in 2012. They remained friends and continued to discuss the possibility of starting a business together.

In 2016, French was employed at Group Health Cooperative, later acquired by Kaiser Permanente (collectively Kaiser), as the Director of Digital Information Technology. In her role at Kaiser, French interacted with vendors and had influence on the selection, hiring, oversight, management, and termination of those vendors. French's supervisors at Kaiser included John Rodgers and Kari Escobedo. Rodgers and Escobedo relied on French's input and recommendations in selecting and hiring venders.

In July 2016, Roth incorporated Pluralstack, with the stated purpose to "provide consulting services to various businesses to enhance their sales and distribution strategies." Roth was listed as the sole member of Pluralstack. Roth and French agreed to work together to facilitate Pluralstack becoming a vendor of Kaiser before Roth incorporated Pluralstack.

French subsequently introduced Roth to her supervisor, Escobedo. Escobedo interviewed Roth and determined that Kaiser would hire Pluralstack as a vendor. In August 2016, Kaiser and Pluralstack signed a Master Service Agreement (MSA). The MSA allowed Pluralstack to work for Kaiser on projects based on terms to be agreed upon in written statements of work (SOW). Roth signed the MSA on behalf of

Pluralstack, and Michael Chung signed on behalf of Kaiser. The MSA was controlling the entire time Pluralstack provided services to Kaiser.

French and Roth met regularly, often weekly, to discuss all aspects of Pluralstack's business. Roth sought French's opinion and advice on many different business issues such as healthcare benefit packages, hiring, firing, and compensation. Roth made payments to French without informing Kaiser. In order to keep French's involvement in Pluralstack a secret, Roth created a Pluralstack e-mail for French named anyone@pluralstack.io—where Roth referred to French as "Annie" or "Annie Won."

Roth and French concealed their relationship from everyone at Kaiser. They did not disclose that French had a financial interest in Pluralstack. They actively concealed payments Roth and Pluralstack made to French.

Pluralstack provided high quality products and services to Kaiser that were at or under fair market value. French recommended that Kaiser enter into certain SOWs with Pluralstack if she thought it would be a good fit, but she occasionally did not recommend Pluralstack. After working with Pluralstack, other employees at Kaiser, without French's input, would recommend that Kaiser retain Pluralstack to complete several projects. There were over 40 SOWs between Pluralstack and Kaiser worth over $40 million. Roth personally signed each SOW.

Roth and French's relationship ended in 2019. Pluralstack stopped doing business with Kaiser in 2019.

B

Roth and French dispute how and why payments were made to French and what French's role was at Pluralstack.

According to French, she and Roth mutually started Pluralstack with the goal of getting the MSA with Group Health before it was acquired by Kaiser. French testified that she and Roth discussed they would be equal partners, sharing profits, risks, and decision making. French testified that the plan was for her to join Pluralstack after the MSA was signed. She testified that her salary at Pluralstack was equal to her salary at Kaiser, and if she got a raise or bonus, so would Roth.

French testified that from 2016 to 2017, Roth paid her with cash and a debit card. French explained that Roth eventually met with an attorney who advised that creating a trust would be the best way to pay French and keep her involvement a secret. French testified that Roth proceeded to create a trust called Epic Draw Trust, and Roth paid her through the trust from July 2017 to August 2018. According to French, Roth met with an attorney who advised to no longer use the trust and to instead compensate French through a consulting company. French created a business called 10in10 Consulting, which Roth subsequently paid for French's work.

According to Roth, he never agreed to be business partners with French. He testified that he never agreed to split profits or for French to eventually join Pluralstack. Roth testified that he only paid French because she forced him to pay her because she was giving advice. Roth testified that he initially paid her through a debit card and cash and then eventually through her company 10in10 Consulting.

Roth testified that it was never a discussion that French would become an employee with Pluralstack. Roth testified that, after French left Kaiser, he told her that Pluralstack was winding down, and she could not become an employee. After that conversation, Roth and French had a falling out.

-4-

C

French sued Roth and Pluralstack in March 2021 asserting claims of breach of contract, unjust enrichment, fraud, misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of partnership, appointment of receiver, and declaratory judgment. French sought damages for breach of contract, unjust enrichment, and fraud. French also sought a declaration from the court that French was a 50 percent owner in Pluralstack, that she is entitled to 50 percent of the profits of Pluralstack from its inception to the present, and that she was entitled to 50 percent of the value of proceeds from winding down the business.

Roth denied the allegations in the complaint and asserted several counterclaims against French. Roth also raised multiple affirmative defenses, including the doctrines of illegality, in pari delicto,[1] and unclean hands.

Roth unsuccessfully moved to dismiss each of French's claims under CR 12(b)(6) and CR 9(b). After discovery, Roth's motion for summary judgment was denied. During trial, Roth moved for judgment as a matter of law arguing any alleged partnership agreement is illegal and void. Throughout the litigation, Roth's central argument and theory was that all of French's claims must be barred because her conduct violated Washington's commercial bribery statute. See RCW 9A.68.060.

French moved pretrial to exclude evidence and argument related to illegality. In response, Roth argued that illegality was a mixed issue of law and fact, and the court could decide whether the defense applies as a matter of law based on facts found at

---

[1] "In para delicto" is a Latin phrase meaning in equal fault or wrong. MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/legal/inparidelicto (last visited May 19, 2025).

trial. The trial court denied French's motion in part. The court agreed that the illegality defense raised a mixed issue of law and fact. The court ruled that it would instruct the jury to make factual determinations whether there was an express or implied agreement, but the court itself would decide the application of doctrines of illegality and in pari delicto and the policy considerations those doctrines reflect. The court prohibited the parties from using the terms "illegal," "illegality," "crime," "criminal," or "felony," but allowed the use of "bribery," "bribe," "bribing," "commercial bribery," and "kickback."

Roth proposed the following jury instruction:

Mr. Roth has the burden of proving the affirmative defense of illegality. If a contract is illegal, flows from an illegal act, or is legal but carried out in an illegal manner, then the contract is void and neither party can enforce it.

Mr. Roth claims that any alleged partnership agreement between Ms. French and Mr. Roth was illegal because it violated Washington's commercial bribery statute, because it violated duties Ms. French owed as an employee or agent of her employer, and because it was against public policy. Under Washington's commercial bribery statute, a trusted person may not request, accept, or agree to accept a pecuniary benefit for himself, herself, or another under a request, agreement, or understanding that he or she will violate a duty of fidelity or trust arising from his or her position as a trusted person.

Roth also proposed a special verdict form that directed the jury to make decisions related to the commercial bribery statute, whether or not the jury found there was a contract between the parties.

The trial judge did not give Roth's proposed instructions and verdict form. Rather, the trial court provided the following special verdict form:

## MS. FRENCH'S CLAIMS

Question 1: Did Ms. French and Mr. Roth have an agreement to form a partnership?

Question 2: Did Ms. French and Mr. Roth form an implied partnership through their conduct?

If the jury answered yes to either of those questions, the form instructed the jury to answer the following questions:

Question 19: If you found a partnership existed, at the formation of the partnership, did Mr. Roth offer, confer, or agree to confer a pecuniary benefit directly or indirectly upon Ms. French under a request, agreement, or understanding that Ms. French would violate a duty of fidelity or trust arising from her position as a trusted person?

Question 20: If you found a partnership existed, at the formation of the partnership, did Ms. French request, accept, or agree to accept a pecuniary benefit for herself from Mr. Roth under a request, agreement, or understanding, that she would violate a duty of fidelity or trust arising from her position as a trusted person?

The jury answered "no" to questions 1 and 2 of the special verdict form: finding that French and Roth did not have an agreement to form a partnership and did not form an implied partnership, and thus there was no breach of an agreement or fiduciary duties. The jury found that Roth was unjustly enriched by a benefit confirmed on him by French and awarded French $1,600,000 on her claim. The jury denied all of French's other claims and denied all of Roth's counterclaims.

After trial, the trial court entered findings of fact and conclusions of law addressing Roth's affirmative defenses of illegality, in pari delicto, and unclean hands as a matter of law. In its conclusions, the court explained that the defense of illegality permits a court to void or decline to enforce an illegal contract or agreement. But because the jury concluded that there was no contract or agreement between Roth and

-7-

French, the defense did not apply. The court also concluded that a claim for unjust enrichment is "an independent basis of substantive liability."[2] The court concluded that a claim for unjust enrichment "implies a contract in law rather than in fact, and is 'not based on a contract, or on any consent or agreement' between the parties."[3] And because the jury found that there was no contract or agreement between French and Roth or Pluralstack, Roth's illegality defense failed.

The trial court also concluded that the illegality defense was not available to individuals who are more culpable than the party asserting the claim. The court reasoned that Roth testified that French accepted criminal bribes he was offering during their business relationship, which establishes his knowledge that he was intentionally soliciting conduct by French that he knew was a criminal act. In contrast, the court reasoned that French's intent was only to violate her employment agreement, not commit a criminal act. Thus, when comparing scienter of Roth and French, the court concluded Roth's conduct was slightly more culpable because he was soliciting criminal bribes and French's intent was to violate her employment agreement.

The court also stated that "it was not clear to the Court that the conduct actually reached the level of criminal commercial bribery." Lastly, the court found that the illegality defense is not available if it would fail to promote any public benefit. The court explained:

> The Court finds that public policy considerations would encourage more cases of this sort, not less, if the defendants like Mr. Roth could be unjustly enriched in a matter and seek to claim a defense years later that

---

[2] Quoting Puget Sound Sec. Patrol, Inc. v. Bates, 197 Wn. App. 461, 475, 389 P.3d 709 (2017).
[3] Quoting Heaton v. Imus, 93 Wn.2d 249, 252, 608 P.2d 631 (1980).

their ill-gotten gains were due to their belief that they knowingly were involved in committing a crime.

The court summarized:

Following the jury verdict, and this Court's independent finding that there was no partnership or other contract in this matter, and for the reasons above, this Court does not find the defenses of illegality or its related doctrine of *in pari delicto*, or unclean hands valid here. To allow these defenses to invalidate the jury verdict would lead to an unjust enrichment to Mr. Roth, the exact unjust enrichment that the jury sought to remedy through its equitable verdict in favor of Ms. French.

The court entered a judgment of $2,156,010.53 in favor of French. The judgment included the $1,600,000.00 principal judgment and $556,010.53 in prejudgment interest.

Roth appeals.[4]

II

Roth argues that the trial court's instructions and verdict form misstated the law and deprived him of the ability to present his defenses of illegality and unclean hands. We disagree.[5]

A

A trial court's decision not to issue a requested jury instruction is reviewed for abuse of discretion. Stiley v. Block, 130 Wn.2d 486, 498, 925 P.2d 194 (1996). The trial court has wide discretion in deciding "whether to give a particular instruction." Terrell v. Hamilton, 190 Wn. App. 489, 498, 358 P.3d 453 (2015). "Jury instructions are

---

[4] French cross appealed, but because we vacate only the award of prejudgment interest and otherwise affirm, we do not address the merits of her cross-appeal.

[5] Roth first argues that the trial court erred in denying his motion for summary judgment. A denial of summary judgment cannot be appealed following a trial if the denial was based on a determination that material facts were disputed and must be resolved by a fact finder. McLelland v. Paxton, 11 Wn. App. 2d 181, 204, 453 P.3d 1 (2019).

sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." <u>Keller v. City of Spokane</u>, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). A trial court need never give a requested instruction that is erroneous in any respect. <u>Hendrickson v. Moses Lake Sch. Dist.</u>, 192 Wn.2d 269, 278, 428 P.3d 1197 (2018).

Unjust enrichment is an independent basis of substantive liability. <u>Puget Sound Sec. Patrol, Inc. v. Bates</u>, 197 Wn. App. 461, 475, 389 P.3d 709 (2017). "Unjust enrichment allows a party to recover the value of a benefit it has conferred on another party, absent any contractual relationship, if fairness and justice require it." <u>Samra v. Singh</u>, 15 Wn. App. 2d 823, 837, 479 P.3d 713 (2020). "To prevail on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." <u>Singh</u>, 15 Wn. App. 2d at 837. Lastly, if "a party can show a right of recovery without relying on the illegal contract and without having the court sanction the same[,] he may recover in any appropriate action." <u>Melton v. United Retail Merchs. of Spokane</u>, 24 Wn.2d 145, 162, 163 P.2d 619 (1945).

B

We conclude that the trial court did not abuse its discretion when it declined to give Roth's proposed jury instructions and verdict form. First, as the trial court concluded, unjust enrichment is not rooted in a contract—illegal or not. It is an independent basis of substantive liability. Therefore, the traditional defense to contracts, including illegality, would not apply because there was no contract. Indeed, Roth's own proposed jury instruction for commercial bribery and illegality provided: "Mr.

Roth has the burden of proving the affirmative defense of illegality. If a contract is illegal, flows from an illegal act, or is legal but carried out in an illegal manner, then the contract is void and neither party can enforce it." (Emphasis added.) Additionally, his proposed special verdict form only required factfinding on the elements of commercial bribery under French's breach of contract claim. Lastly, even if there were a contract, courts have awarded unjust enrichment even when the underlying contract is illegal. St. John Farms, Inc. v. D.J. Irvin Co., 25 Wn. App. 802, 809, 609 P.2d 970 (1980) (the court awarded unjust enrichment although the underlying agreement was illegal because the statute's purpose of protecting the public would not be furthered by denying recovery).

Second, the cases relied on by Roth are unpersuasive. For example, in Evans v. Luster, 84 Wn. App. 447, 449, 928 P.2d 455 (1996), Evans and a contractor reached an agreement to install drainage and clear grade on Evans's property. Both parties were aware that permits were required in order to do this work, but the parties agreed to secretly do the work without permits. Luster, 84 Wn. App. at 449. After the county halted the work, the contractor sued Evans for the money due under the contract. Luster, 84 Wn. App. at 449. The court held that it would not enforce the illegal contract because both parties knew the agreement was illegal. Luster, 84 Wn. App. at 450-51. The court also rejected an unjust enrichment claim because "one party frequently retains the benefit of an illegal contract [and] [u]njust enrichment alone is an insufficient reason for the courts to assist in the enforcement of an illegal agreement." Luster, 84 Wn. App. at 453.

Unlike Luster, here, the jury found that there was no agreement or contract between the parties. Nor does Luster provide that illegality is a defense to a claim for

unjust enrichment. Luster does not address circumstances, as here, where there was no underlying agreement.

Roth also relies on Amtruck Factors Inc. v. International Forest Products, 59 Wn. App. 8, 795 P.2d 742 (1990). In that case, the plaintiff sued a lumber company seeking payment of unpaid invoices. Amtruck, 59 Wn. App. at 13. The lumber company counterclaimed arguing that the agreements were void for illegality because they were procured through fraud and negligent misrepresentation. Amtruck, 59 Wn. App. at 13. We remanded to the trial court for the jury to make factual findings whether there was an illegal scheme so whether the agreements were void for illegality could be determined. Amtruck, 59 Wn. App. at 22.

Amtruck does not help Roth's argument. Again, this case dealt with a contract between the parties. Unjust enrichment was not a claim. Further, here, the jury would have made factual findings surrounding commercial bribery and illegality if it found there was a contract, which is precisely what Amtruck requires. But because the jury found there was no agreement, it did not need to reach the elements of commercial bribery.

Third, "so long as 'a party can show a right of recovery without relying on the illegal contract and without having the court sanction the same he may recover in any appropriate action.'" Brougham v. Swarva, 34 Wn. App. 68, 80, 661 P.2d 138 (1983) (quoting Melton, 24 Wn.2d at 162). Here, French demonstrated a right to recovery without relying on any contract. She demonstrated that (1) Roth was enriched by a benefit that French conferred upon him and (2) Roth had knowledge of the benefit conferred upon him such that it would be unjust for Roth to retain the benefit without

payment of its value.  This was established without proving there was an underlying agreement between the parties.

Fourth, the trial judge is only required to give instructions that accurately reflect the law and still permit Roth to argue his theory of the case.  Throughout trial, Roth was permitted to argue the payments were "kickbacks" or "bribes."  Roth was free to argue his theory of the case that French was demanding payment from him in violation of the commercial bribery statute.  The jury instructions and special verdict form accurately reflected the law and still allowed Roth to argue his theory of the case.

For these reasons, the trial court did not abuse its discretion in declining to give his proposed instruction and verdict form.

C

Roth next argues that the trial court erred in failing to instruct the jury that unclean hands is a defense to unjust enrichment.  We disagree.

Roth proposed the following instruction based on his defense of unclean hands:

Those who act unjustly or in bad faith in the transaction concerning which they complain are deemed to act with unclean hands.

The trial court concluded that the unclean hands defense did not apply and declined to give Roth's proposed instruction.  The court reasoned that Roth and French both engaged in misconduct toward Kaiser, but French did not engage in any misconduct toward Roth or Pluralstack.

The trial court correctly concluded after trial that the unclean hands defense did not apply as a matter of law.  The unclean hands defense is limited to the "transaction under investigation," i.e., the parties to the transaction.  J.L. Cooper & Co. v. Anchor

-13-

Secs. Co., 9 Wn.2d 45, 63-64, 113 P.2d 845 (1941). Here, the transactions at issue were between Roth and French. Kaiser was not a party to this litigation. And the jury rejected all of Roth's counterclaims, finding that Roth was not harmed by French's conduct. Accordingly, the trial court did not err when it declined to give Roth's proposed instruction and when it then concluded the defense did not apply as a matter of law.

III

Roth argues the trial court erred in awarding prejudgment interest on the unjust enrichment claim. We agree.

French moved for an award of prejudgment interest on the $1,600,000.00 awarded by the jury on the unjust enrichment claim. French asserted that she was entitled to $705,928.23 in prejudgment interest because the damages were liquidated.

Roth opposed an award of prejudgment interest. As he argues now on appeal, Roth asserted prejudgment interest was unavailable as a matter of law because the claim was based on quantum meruit[6] and is unliquidated. The court granted the motion

---

[6] Roth states the jury awarded French $1,600,000 under a quantum meruit theory. Roth is incorrect, as the jury found for French under unjust enrichment, which is a distinct doctrine from quantum meruit.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). This a contract implied in law, and to recover on an unjust enrichment claim requires proving (1) the defendant received a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. Young, 164 Wn.2d at 484-85.

In contrast, quantum meruit is a method for recovery for the reasonable value of services under a contract implied in fact. Young, 164 Wn.2d at 485. To prove a contract implied in fact, the elements are (1) the defendant requests work, (2) the plaintiff expects payment, and (3) the defendant knows or should know the plaintiff expects payment. Young, 164 Wn.2d at 486. Thus, the important distinction between quantum merit and unjust enrichment is that unjust enrichment is founded on notions of equity and justice and quantum merit is founded in the law of contracts. Young, 164 Wn.2d at 486.

Here, the jury answered "yes" to "Was Mr. Roth enriched by a benefit that Ms. French conferred upon him, and Mr. Roth had appreciation or knowledge of that benefit conferred upon him, such that it would be unjust for Mr. Roth to retain the benefit without payment of its value?" Then, the jury answered $1,600,000 to the amount of damages for unjust enrichment. Based on these special verdict answers, it

for prejudgment interest in part and awarded prejudgment interest in the amount of $556,010.53.

We review an award of prejudgment interest for abuse of discretion. <u>TJ Landco, LLC v. Harley C. Douglass, Inc.</u>, 186 Wn. App. 249, 255, 346 P.3d 777 (2015). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds or untenable reasons. <u>Olver v. Fowler</u>, 161 Wn.2d 655, 663, 168 P.3d 348 (2007).

Prejudgment interest is awarded on the principle that a defendant who retains money which he owed to another should be charged interest upon it. <u>Hansen v. Rothaus</u>, 107 Wn.2d 468, 473, 730 P.2d 662 (1986). "The plaintiff should be compensated for the use value of the money representing his damages for the period of time from his loss to the date of judgment." <u>Hansen</u>, 107 Wn.2d at 473.

Prejudgment interest will be awarded only if the claim is liquidated or readily determinable, but it will not be awarded if the claim is unliquidated. <u>Hansen</u>, 107 Wn.2d at 472. A liquidated claim is one where "'where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.'" <u>Hansen</u>, 107 Wn.2d at 472 (quoting <u>Prier v. Refrigeration Eng'g Co.</u>, 74 Wn.2d 25, 32, 442 P.2d 621 (1968)).

In contrast, a claim is unliquidated "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to

---

is clear this claim was based on unjust enrichment, not quantum meruit. Accordingly, the cases cited by Roth under a quantum merit theory are irrelevant.

whether a larger or a smaller amount should be allowed." Prier, 74 Wn.2d at 33. The rationale for only awarding prejudgment interest for liquidated damages is that it would be unfair to hold a defendant accountable for interest on an amount that is unquantifiable or unforeseeable before a jury verdict. Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 125-26, 323 P.3d 1036 (2014).

Courts have found that damages are unliquidated when the amount of damages depends on "reasonableness." See Kiewit-Grice v. State, 77 Wn. App. 867, 873-74, 895 P.2d 6 (1995) (reasonableness of claimed expenses was a jury question and thus claim was unliquidated); Hansen, 107 Wn.2d at 477 (medical expenses were unliquidated because the reliance upon opinion and discretion in deciding whether the amount spent was reasonable); Ski Acres Dev. Co. v. Douglas G. Gorman, Inc., 8 Wn. App. 775, 782, 508 P.2d 1381 (1973) (no prejudgment interest was appropriate when reasonableness of repairs was a jury question).

Here, the trial court abused its discretion in awarding prejudgment interest. While the amount that was awarded was on the unjust enrichment claim, not quantum meruit, the jury still had to exercise its discretion in deciding how much was the reasonable benefit that French conferred upon Roth and Pluralstack. The jury was instructed that if it found Roth was unjustly enriched, then French is entitled to "the reasonable value to the defendant of the services rendered to the defendant, subtracting the reasonable value of any performance received by the plaintiff." This language illustrates that the jury was instructed to use its discretion and opinion on what was reasonable under the circumstances.

Because the award of $1,600,000 necessarily relied on opinion and discretion, the damages were unliquidated as a matter of law.  Hansen, 107 Wn.2d at 472.

We remand to strike the award of prejudgment interest but otherwise affirm.

Mann, J.

WE CONCUR:

Feldman, J.

Coburn, J.