[No. 14604-9-III.    Division Three.    July 2, 1996.]

STERLING BUSINESS FORMS, INC., *Appellant*, v. RICHARD E. THORPE, ET AL., *Defendants*, WILLY SCHUMACHER, *Respondent*.

*Erika Balażs* and *Lukins & Annis, P.S.*, for appellant.

*Ernest D. Greco* and *Turner, Stoeve, Gagliardi & Goss, P.S.*, for respondent.

THOMPSON, J. — Sterling Business Forms, Inc. (Sterling) appeals the summary dismissal of its conspiracy claim against Willy Schumacher. It contends there were mate-

rial issues of fact precluding summary judgment. We reverse and remand for trial.

## FACTS AND PROCEDURAL HISTORY

Sterling commenced this action against Liberty Business Forms, Inc. (Liberty), Richard Thorpe, Elizabeth Thorpe, Lee Lampson, Dawn Ingram and Willy Schumacher. With the exception of Mr. Schumacher, the individual defendants were former Sterling employees. Sterling alleged several causes of action against Liberty, including a claim that Mr. Schumacher conspired with Sterling employees to obtain confidential information regarding Sterling's methods and customers and to improperly solicit clients for the benefit of Liberty and to the detriment of Sterling.

After considerable discovery was completed and after an earlier motion for summary judgment was denied, Liberty and the former employee-defendants moved for partial summary judgment. Mr. Schumacher joined the moving parties in requesting a dismissal of the conspiracy claim against him. The trial court granted Mr. Schumacher's motion and Sterling filed this appeal.

## FACTS

The pleadings and materials submitted by the parties in the summary judgment proceedings establish the following.

Sterling operates a business forms production and distribution plant in Spokane. Mr. Thorpe was Sterling's Spokane plant manager and part of Sterling's management team. Mr. Lampson was its production manager. As the highest ranking employees in Sterling's Spokane operation, both had access to the company's financial information, customer lists, and other detailed information about business operations. Both signed confidentiality

agreements whereby they agreed not to use or disclose customers, sales, and other information regarding the business.

At some point in late 1990, Mr. Thorpe and Mr. Lampson began to make plans to leave Sterling and establish their own business forms plant. In February or March 1991, Mr. Thorpe contacted Dennis Hubbell of Business Forms, Inc. (BFI) about investing in the venture and provided him with a packet of information. Mr. Hubbell passed the information on to Mr. Schumacher. Mr. Hubbell and Mr. Schumacher each owned 50 percent of BFI stock and BFI was a Sterling customer.

Mr. Schumacher found the information about the new venture incomplete and said he was not interested. However, some time later Mr. Thorpe provided him with a 1,000-page packet of information. After reviewing the material, Mr. Schumacher agreed to loan the new venture $150,000 and become a majority shareholder once bank financing was approved.

Mr. Schumacher helped obtain bank financing for Liberty.[1] One bank was told Mr. Thorpe and Mr. Lampson were planning an "insider takeover" of Sterling's Spokane operation. Another bank was told that (a) Sterling was moving its Spokane plant "south and begin[ning] to concentrate in the California forms market," (b) almost all of Sterling's customers had expressed a willingness to do business with Liberty, and (c) BFI would buy 60 percent of its forms from Liberty and guarantee the bank loan.

Bank financing for Liberty was approved in April 1991. As required by the bank, Mr. Schumacher loaned Liberty $150,000 in several increments from April through July 1991. He and BFI also guaranteed the bank loans. Mr. Schumacher's loan to Liberty was unsecured and subordinated to the bank's line of credit. Mr. Schumacher also acquired a 51 percent interest in Liberty for $11,000 and became its president.

---

[1]Liberty Business Forms, Inc. was incorporated on April 22, 1991.

In April, Liberty leased a building and ordered equipment and phones. According to a Sterling employee, Liberty was taking orders from customers by the end of May. This lawsuit was commenced on June 18, 1991.

## ANALYSIS

Contentions. Sterling contends there were genuine issues of fact precluding summary judgment. It contends that Mr. Schumacher conspired with the remaining defendants to form Liberty in violation of those defendants' duties of loyalty and the fact he agreed to accomplish the object of the conspiracy (formation of Liberty) is enough to render him liable for the conduct of his co-conspirators. According to Sterling, reasonable minds could infer that he had to know more than he would admit in depositions to justify an investment of $150,000, a personal guarantee and an additional guarantee by his other business venture.

Mr. Schumacher contends the court must view the evidence in light of the applicable standard of proof at trial and the standard for proving conspiracy is clear, cogent and convincing evidence. Based on that standard, Mr. Schumacher contends the trial court properly granted summary judgment.

■ Standard of Review. When reviewing a summary judgment, this court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment should be granted only when there are no genuine issues of material fact. All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. *Id.* at 437.

■ A plaintiff in a civil conspiracy action has the burden of proving the case by a preponderance of the evidence, and must establish the existence of the conspiracy by clear, cogent and convincing evidence. *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 528-29, 424 P.2d 290 (1967); *Lewis*

*Pac. Dairymen's Ass'n v. Turner*, 50 Wn.2d 762, 314 P.2d 625 (1957); *Harrington v. Richeson*, 40 Wn.2d 557, 570, 245 P.2d 191 (1952). As Sterling contends, notwithstanding the clear and convincing evidentiary standard involved in civil conspiracy cases, the evidence at issue must be construed in the light most favorable to the nonmoving party.

> While the issue turns on what the jury could find, and while the court must keep in mind that the jury must base its decision on clear and convincing evidence, the evidence is still construed in the light most favorable to the nonmoving party and the motion is denied if the jury could find in favor of the nonmoving party.

*Herron v. KING Broadcasting Co.*, 112 Wn.2d 762, 768-69, 776 P.2d 98 (1989).

The role of the jury is not denigrated because the burden of proof in a case is heightened. Weighing of the evidence, credibility determinations, and the drawing of legitimate inferences from the facts remain jury functions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). *See Herron*, 112 Wn.2d at 768. *Sedwick v. Gwinn*, 73 Wn. App. 879, 885, 873 P.2d 528 (1994), cited by Mr. Schumacher, does not hold to the contrary.

■ Civil Conspiracy. An action for civil conspiracy lies when there is an agreement by two or more persons to accomplish some purpose, not in itself unlawful, by unlawful means. *Corbit*, 70 Wn.2d at 528-29. Sterling contends the unlawful means included the use of confidential information regarding methods and customers and the solicitation of an employer's clients for an employee's future venture. A finding that a conspiracy exists may be based on circumstantial evidence, although the "circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent only with [the] existence of the conspiracy." *Id.* at 529.

The Evidence. The evidence submitted in the summary judgment proceedings establishes that Mr. Schumacher

agreed to assist Mr. Thorpe and Mr. Lampson in the formation of Liberty. The evidence also establishes that Mr. Schumacher knew both men were Sterling employees in top management positions. In addition, there was evidence from which one could infer that Mr. Schumacher knew that Sterling customers were being solicited by Mr. Thorpe and, perhaps, Mr. Lampson, while both were still Sterling employees. Indeed, BFI was a Sterling customer. Detailed information about Sterling's business was presented to Mr. Schumacher via Mr. Thorpe and there was evidence that Mr. Schumacher was using this information to obtain bank financing for Liberty.

Mr. Schumacher's response to a deposition question regarding his involvement in obtaining lines of credit from Security Pacific Bank for Liberty was, "I did it all." This statement, when coupled with the following information contained in Security Pacific Bank documentation, is sufficient to raise a material issue of fact as to Mr. Schumacher's knowledge and participation in the alleged misconduct.

> Liberty Business Forms, Inc. (LBF) is a new entity in the process of being formed by Rick Thorpe and Willy Schumacher. The business operation itself is not a new entity as LBF will basically replenish the void created when Sterling Business Forms, headquartered in Medford, Oregon moves its Spokane plant south and begin[s] to concentrate in the California forms market. Sterling has been in Spokane since 1980 and Rick has been the plant manager since 1986. . . .

> Sterling centralized most of its operations in Medford last September and has began [sic] to concentrate on different markets, although the Spokane operation has been very profitable. . . . It is Rick's intent and the intent of LBF to duplicate the existing plant with some exceptions and conduct a profitable operation very similar to the one [that] he has managed for the last six years. The customer base is basically in place, as 65-70% of the existing distributors are ones that Rick and his present sales staff acquired. Almost all have expressed a willingness to do business with LBF. Rick's involvement with Mr. Schumacher is the next important

consideration. Willy's role is that of an investor, financial manager and guarantor, both individually and corporate. Willy is the owner of Business Forms, Inc. (BFI), a distributor and customer of Sterling[']s. BFI has had a successful history which will be expanded on later. BFI will also guarantee. Willy is additionally the president and 30% owner of KTU of Spokane, Inc., a specialty contractor and existing Spokane BBC customer.

Certainly the formation of Liberty, in and of itself, was not unlawful. However, there was evidence that Sterling's customers were solicited and Sterling's confidential information was being used for the benefit of Liberty. There was also evidence that such alleged conduct was unlawful and damaged Sterling. Therefore, the trial court erred in dismissing Sterling's claim. Although Mr. Schumacher was not a Sterling employee and had not signed a confidentiality agreement, the evidence, viewed in a light most favorable to Sterling, reflects his awareness of the alleged misconduct of Mr. Thorpe and Mr. Lampson and raises a genuine issue of fact as to whether he used the information the employees obtained from Sterling to secure financing for Liberty. Without Mr. Schumacher's participation, a jury might infer that financing would not have been obtained and Sterling would not have been damaged by the loss of its customers, employees and goodwill.

> "To establish liability for conspiracy, it is sufficient if the proof shows concert of action or other facts and circumstances from which the natural inference arises that the unlawful overt act was committed in furtherance of a common design, intention, and purpose of the alleged conspirators. In other words, circumstantial evidence is competent to prove conspiracy."

*Lyle v. Haskins*, 24 Wn.2d 883, 899, 168 P.2d 797 (1946) (quoting 11 Am. Jur. 585 § 56). *See also Accurate Prods., Inc. v. Snow*, 67 Wn.2d 416, 425, 408 P.2d 1 (1965). Since direct evidence of a conspiracy is ordinarily in the possession and control of the alleged conspirators and is seldom attainable, a conspiracy is usually susceptible of no other

proof than that of circumstantial evidence. *Lyle*, 24 Wn.2d at 900.

The liability of conspirators is joint and several. That is, each is liable for all acts committed by any of the other parties, either before or after their entrance, in furtherance of the common design. *Id.* at 900. Here, the entire alleged conspiracy should be placed before the finder of fact, because although the finder of fact must base its decision on clear and convincing evidence, it could find that Mr. Schumacher participated in a conspiracy. That determination will require weighing of the evidence, credibility determinations and the drawing of legitimate inferences from the facts. *Herron*, 112 Wn.2d at 768.

We reverse and remand for trial.

SWEENEY, C.J., and MUNSON, J., concur.

Review denied at 130 Wn.2d 1026 (1997).