249 P.3d 1054 (2011)
Anjelia NEUSON, Appellant,
v.
MACY'S DEPARTMENT STORES INC., a corporation, Respondent.
No. 28968-1-III.
Court of Appeals of Washington, Division 3.
March 22, 2011.
Gregory George Staeheli, Law Office of Gregory Staeheli, Spokane, WA, for Appellant.
Barry Alan Johnsrud, Kristin Suzanne Bell Jackson Lewis LLP, Seattle, WA, Betty Thorne Tierney, Macy's Law Department, Saint Louis, MO, for Respondent.
SWEENEY, J.
¶ 1 A trial court entered findings and concluded that an employer was entitled to a presumption that it mailed an election form, which permitted an employee to opt out of mandatory arbitration of employment-related disputes. The employee's discrimination suit was stayed following the trial court's order. We conclude that the court was not privileged to weigh the evidence in this summary proceeding. And we are unable to conclude that the employer is entitled to arbitration as a matter of law when we view the evidence in a light most favorable to the employee. We therefore reverse the trial court and remand for trial on the arbitration issue.

FACTS
¶ 2 Anjelia Neuson has been a sales associate in the shoe department for Macy's Department Stores, Inc., since 1994. She worked at Macy's in Silverdale, Washington, from July 1994 to September 2006. She then moved to Spokane, Washington, and went to work for Macy's at the Northtown Mall in October 2006.
*1055 ¶ 3 Ms. Neuson injured herself while working at the Northtown Macy's on February 17, 2008. She filed a workers' compensation claim, took medical leave, and returned to work on April 22 with lifting and carrying restrictions. Ms. Neuson claims that, upon her return, Macy's began taking "hostile actions" against her and ultimately discharged her. Clerk's Papers (CP) at 5. She sued Macy's for retaliation, disability discrimination, and wrongful termination. Macy's moved to compel arbitration based on an in-house program it implemented to resolve these disputes. It called the program "Solutions InSTORE."
¶ 4 The "Solutions InSTORE" program was implemented in January 2004. It is a four-step process. The first three steps apply automatically to all employees; they involve informal dispute resolution at various company levels and with various departments in the company. The fourth step is binding professional arbitration and is optional. But an employee must affirmatively opt out of arbitration to avoid being bound to arbitrate an employment dispute. Macy's procedure is to give an employee a one-page "Arbitration Election Form" that allows the employee to opt out of arbitration within 30 days of receiving the form.
¶ 5 Macy's showed that it informed Ms. Neuson about Solutions InSTORE three times and thus gave her three opportunities to opt out of arbitration. It produced declarations that stated it mailed Solutions In-STORE materials and election forms to Ms. Neuson in September 2003 (just before the program was first implemented) and in October 2004.
¶ 6 Robert Noeth manages and supervises the Solutions InSTORE program. He declared that store records show Ms. Neuson's name and then-current address are on the list of recipients who were mailed Solutions InSTORE materials and election forms in September 2003 and October 2004. Tom Schneider has been responsible for Macy's mailing operations since 1992. In a written declaration, he explained Macy's customary mailing procedures. He also explained Macy's system for detecting error. Mr. Schneider said his division was responsible for preparing and mailing the Solutions In-STORE materials and opt-out forms in September 2003 and October 2004. And he said his division used Macy's customary mailing procedures to mail these documents.
¶ 7 Macy's also claimed that it informed Ms. Neuson about Solutions InSTORE when she began working at the Northtown Macy's in Spokane in October 2006. Rebecca Haskin is the Northtown Macy's human resources manager. She declared that all new employees receive a copy of the Solutions InSTORE brochure, which includes the election form. She also attested that all new employees at the Northtown Macy's complete initial paperwork online by sitting at a computer terminal to read and sign each document electronically. That paperwork includes an acknowledgment form by which the employee acknowledges that she received the brochure and understands that she can decline to agree to arbitration. The acknowledgment requires a so-called electronic signature that consists of a combination of numbers unique to an employee, not that employee's actual handwritten signature. All new employee paperwork is maintained in online personnel files; the Northtown Macy's also maintains a hard copy file of the paperwork. It created a hard copy file for Ms. Neuson when she began working there and that file contains an acknowledgment form that has been signed electronically by Ms. Neuson.
¶ 8 Ms. Neuson denied receiving Solutions InSTORE materials and election forms by mail. She claimed she signed a document refusing arbitration in 2004 while she was working at the Silverdale Macy's. Ms. Neuson, by affidavit, also denied completing any form in Spokane on October 4, 2006. She claimed she did not have to complete the paperwork because she was not a new hire. She also introduced a "time sheet," which she said showed she did not start working at the Northtown Macy's until October 9. Ms. Neuson also suggested, again by affidavit, that the paperwork could have been completed and backdated by someone other than her because the individual forms used her maiden name and one form referred to a driver's license number that was not issued to her *1056 until October 11. At oral argument, Ms. Neuson backed away from the significance of the date her driver's license was issued and suggested that she might have had a temporary license at the time.
¶ 9 Finally, Ms. Neuson says that the mailing in Silverdale should not have been considered because she was treated as, and was, a new hire when she came to Spokane. Macy's responds that Ms. Neuson was not considered a new hire in Spokane because she did not have a 60-day break in service but that she was given the necessary information and materials to opt out anyway and did not do so.
¶ 10 The trial judge considered Macy's declarations and arguments and concluded that Macy's made the necessary showing to establish the presumption of mailing for the Solutions InSTORE mailings of fall 2003 and 2004 and completion of the relevant paperwork in Spokane in October 2006. The court based its conclusion on a number of factual findings prepared by Macy's and then ordered arbitration.

DISCUSSION
¶ 11 Macy's contends the court's conclusion that Ms. Neuson failed to opt out of the Solutions InSTORE program is supported by substantial evidence. Br. of Resp't at 21. Macy's is correct. Macy's urges that "[Ms.] Neuson's allegations are too incredible for belief." Br. of Resp't at 23. It argues that "[t]he Trial Court properly weighed the submitted evidence and found in Macy's favor." Br. of Resp't at 33. And it maintains that "[t]he court properly weighed [Ms.] Neuson's self-serving, vague and speculative evidence against Macy's detailed evidence supported by documents created at the time of the alleged events and found in Macy's favor." Br. of Resp't at 38. These arguments might also be correct.
¶ 12 Macy's, however, bases its arguments, and its suggested analysis, on the erroneous assumption that its motion to compel arbitration was resolved by trial and fact finding by the court. Indeed, the court entered findings, prepared and presented by Macy's, to support its order compelling arbitration. This dispute, however, was not resolved by trial; it was resolved summarily on a motion, declarations, and affidavits. CP at 537. The declarations most certainly support the court's findings. But the trial court was not privileged to weigh the evidence in ruling on this summary proceeding. Barker v. Advanced Silicon Materials LLC, 131 Wash. App. 616, 624, 128 P.3d 633 (2006). Indeed, the court's "findings" in a summary proceeding like this are superfluous and are to be ignored. Donald v. City of Vancouver, 43 Wash.App. 880, 883, 719 P.2d 966 (1986).

STANDARD OF REVIEW
¶ 13 The standard of review that structures our analysis here is the same standard we apply to summary judgment proceedingsthe de novo standard of review. Kruger Clinic Orthopaedics, LLC v. Regence BlueShield, 157 Wash.2d 290, 298, 138 P.3d 936 (2006); In re Marriage of Bernard, 137 Wash.App. 827, 832 n. 3, 155 P.3d 171 (2007), aff'd, 165 Wash.2d 895, 204 P.3d 907 (2009). Thus, the question is whether Ms. Neuson has made a prima facie showing that she did not agree to arbitration when the evidence is viewed in a light most favorable to her. Sterling Bus. Forms, Inc. v. Thorpe, 82 Wash.App. 446, 450, 918 P.2d 531 (1996). We consider only the affidavits, declarations, and the parties' other discovery materials. Based on that evidence, we must be able to conclude that Macy's, the moving party, was entitled to judgment as a matter of law. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300-01, 45 P.3d 1068 (2002). And, again, we must be able to conclude this while indulging all reasonable inferences from these affidavits and declarations in favor of Ms. Neuson. Id. at 300, 45 P.3d 1068.

MAILBOX RULE
¶ 14 Macy's is entitled to a presumption of mailing if it shows the company's customs on mailing or notification and its compliance with those customs in this specific instance. Olson v. The Bon, Inc., 144 Wash.App. 627, 635, 183 P.3d 359 (2008). That showing has been made here, so the presumption of receipt attaches.
*1057 ¶ 15 In September 2003 and again in October 2004, Macy's mailed Solutions InSTORE materials and an election form to Ms. Neuson at her address of record. That address was maintained in Macy's employee information database. And Macy's followed its mailing custom when mailing the Solutions In-STORE packet. That custom consisted of printing documents for each employee, folding and inserting those documents by machine into envelopes, sealing the envelopes, dropping the envelopes into a mail bin, and taking the mail bin to another location where the envelopes were sorted, stamped, and picked up by the United States Postal Service at 4:00 p.m. daily.
¶ 16 In October 2006, Macy's again gave Ms. Neuson Solutions InSTORE materials and an election form by complying with its custom for completing new hire paperwork. Macy's gives each new employee a Solutions InSTORE brochure and an election form. The new employee then uses a computer terminal to complete the majority of the new hire paperwork electronically. The electronic paperwork includes an acknowledgment form that the employee received the Solutions InSTORE brochure and understands her opportunity to decline arbitration. The employee reads and signs each document electronically using her social security number, month and day of birth, and zip code. Macy's computer program uses that personal information to generate an electronic signature unique to that employee. Once the employee electronically signs a document, the computer then generates a confirmation page that lists the employee's name, the store site, the name of the form signed, and the date and time the employee signed it. All completed new hire paperwork is stored in online personnel files. It is also stored in a hard copy file. The Northtown Macy's human resources assistant, Sarah Allie, recalled asking Ms. Neuson to complete new hire paperwork. And Ms. Neuson's employee file includes a document confirming that she signed the acknowledgment form, which shows she received the Solutions InSTORE brochure and understood she had 30 days to opt out of arbitration.
¶ 17 This does not, however, end our inquiry because Macy's showing gives rise to a presumption and only a presumption; the presumption is not conclusive. Olson, 144 Wash.App. at 634, 183 P.3d 359. "Presumptions are the `bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' Mockowik v. Kansas City, St. J. & C.B. R.R., 196 Mo. 550, 94 S.W. 256, 262 (1906). The sole purpose of a presumption is to establish which party has the burden of going forward with evidence on an issue." In re Indian Trail Trunk Sewer, 35 Wash.App. 840, 843, 670 P.2d 675 (1983) (internal quotation marks omitted). We, then, turn to the evidence supporting Ms. Neuson's position that she did not receive an opt-out form and, therefore, could not opt out of arbitration.
¶ 18 Ms. Neuson lived at three separate addresses while working at the Silverdale Macy's. She swore that an attorney advised her to opt out of arbitration when in Silverdale and that she did so. She also claims, and submitted an affidavit that, contrary to Macy's claim, October 4, 2006, was not her first day of work in Spokane. She says her first day was October 9. She offered the date on her driver's license as evidence that she was not present on October 4. And she filed a document described as an "attendance record" that shows she worked on October 9 but not on October 4. The parties dispute the purpose and significance of the attendance record. And Ms. Neuson withdraws her argument that the driver's license supports a showing of her first day of work. But she ultimately denies by sworn affidavit that Macy's gave her the documents necessary to opt out of the Solutions InSTORE arbitration provision.
¶ 19 Ms. Neuson had a 30-day break in employment between the Macy's in Silverdale and the Northtown Macy's in Spokane. But she says she was treated as a new hire by the Northtown Macy's. She claims that break in service and her treatment as a new hire voids whatever efforts Macy's might have made to notify her in Silverdale of the opportunity to opt out of arbitration. Br. of Appellant at 12-13. Macy's responds there must be a 60-day break in service to trigger *1058 its obligation to again send the opt-out materials to an employee but that it did so anyway.
¶ 20 At the summary judgment stage of these proceedings, our task is to decide whether Ms. Neuson met her burden of production. Renz v. Spokane Eye Clinic, P. S., 114 Wash.App. 611, 623, 60 P.3d 106 (2002). That is, has she produced sufficient evidence to rebut the presumption that Macy's mailed and she received the materials necessary to opt out of the mandatory arbitration portion of Macy's Solutions InSTORE program? Indian Trail Trunk Sewer, 35 Wash.App. at 843, 670 P.2d 675 (presumptions lose efficacy when opposing party produces credible contrary evidence). We conclude that she has met her burden. Gibson v. Rouse, 81 Wash. 102, 109, 142 P. 464 (1914); Ault v. Interstate Sav. & Loan Ass'n, 15 Wash. 627, 635, 47 P. 13 (1896); see also Tassoni v. Dep't of Ret. Sys., 108 Wash.App. 77, 87, 29 P.3d 63 (2001) (holding that presumption was rebutted by plaintiff's testimony that he did not receive the notice). Macy's evidence of mailing and receipt and Ms. Neuson's evidence of non-receipt becomes a question of fact for the trier of fact. Kubey v. Travelers Protective Ass'n of Am., 109 Wash. 453, 457, 187 P. 335 (1920); Malloy v. Drumheller, 68 Wash. 106, 117, 122 P. 1005 (1912); Automat Co. v. Yakima County, 6 Wash.App. 991, 995-96, 497 P.2d 617 (1972). Necessarily then, we do not pass on how persuasive Ms. Neuson's showing of non-receipt might be. Renz, 114 Wash.App. at 623, 60 P.3d 106.
¶ 21 The resolution of the underlying factual dispute here is complicated by the use of an electronic signature. This signature is essential to Macy's position that Ms. Neuson received the materials and form necessary to opt out of arbitration. It is not a signature in the traditional sense but rather a string of numbers consisting of an employee's social security number, birth date, and zip code. The information in Ms. Neuson's electronic signature is unique to her, and Macy's urges that it is sufficient to show that Ms. Neuson received the opt-out form. We find evidence that the Northtown Macy's has a procedure and that its procedure was followed, but we do not find evidence of how or why the information on this electronic signature would be unavailable to anyone other than Ms. Neuson and, ultimately, why it is the same as or better than a traditional signature.
¶ 22 Macy's also urges us to apply the "context rule" laid out in Berg v. Hudesman, 115 Wash.2d 657, 678-79, 801 P.2d 222 (1990). Application of the analytical approach set out in Berg might well be appropriate. But the "context rule" to contract interpretation tends to favor fact finding rather than summary resolution of these contract disputes:
The "context rule" is the framework for interpreting written contract language which involves determining the intent of the contracting parties by viewing the contract as a whole, including the subject matter and objective of the contract, all circumstances surrounding its formation, the subsequent acts and conduct of the parties, statements made by the parties in preliminary negotiations, and usage of trade and course of dealings.
Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 895, 28 P.3d 823 (2001). This is especially true here, where Ms. Neuson's failure to respond, rather than her affirmative assent, triggered the arbitration provision.
¶ 23 We reverse the trial court's decision and remand for trial on whether the parties agreed to arbitration.
WE CONCUR: KORSMO, A.C.J., and SIDDOWAY, J.