

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PUGET SOUND SECURITY PATROL, INC., a Washington corporation, | No. 74545-0-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| WILLIAM BATES, an individual, KATHRYN BATES, his wife, and the marital community composed thereof, | |
| Respondents. | FILED: January 9, 2017 |

LEACH, J. — Puget Sound Security Patrol Inc. appeals the trial court's dismissal of its action against Kathryn Bates. After Kathryn's husband, William Bates, violated the noncompete provision of his employment contract with Puget Sound, it sued Kathryn and William[1] for civil conspiracy and asked that the trial court impose a constructive trust on earnings that William contributed to their shared expenses. When the trial court granted summary judgment for Kathryn, it also struck a supplemental brief and three declarations as untimely.

Because the supplemental brief was untimely argument, the trial court properly excluded it. Because Puget Sound submitted the three declarations in

---

[1] We refer to the parties by their first names for clarity and intend no disrespect.

opposition to Kathryn's motion to strike certain factual assertions and not in opposition to her summary judgment motion, the trial court did not need to perform an analysis under Burnet v. Spokane Ambulance[2] before striking them. Because no genuine issue of material fact existed about Kathryn's alleged conspiracy with William to accomplish an unlawful purpose or a lawful purpose through unlawful means or that they made an agreement to do so, the trial court correctly dismissed the conspiracy claim. And because Puget Sound failed to plead facts sufficient to support an unjust enrichment claim, the trial court properly dismissed that claim too. We affirm.[3]

FACTS

Kathryn and William Bates married in 2005. William began working as a business development manager for Puget Sound in July 2009. But he did not finalize the terms of his employment until that September, when he signed a noncompete agreement in which he agreed not to directly or indirectly compete

---

[2] 131 Wn.2d 484, 933 P.2d 1036 (1997).

[3] We deny Kathryn's motion to strike the appendices in Puget Sound's appellate brief. Appendices A, B, and E were part of the trial court record. We decide below that the trial court properly struck the e-mail in Appendix E. Appendix C is a public record. And Appendix D is a notice of unavailability; it does not affect our analysis. In any case, "[s]o long as there is an opportunity (as there was here) to include argument in the party's brief, the brief is the appropriate vehicle for pointing out allegedly extraneous materials—not a separate motion to strike." Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012).

with Puget Sound or work for any competing entity within 24 months of working there. Kathryn suggested edits to the noncompete provision before William signed the agreement. She is a human resources manager and has reviewed and edited noncompete agreements as part of her work. She did not read the final version of William and Puget Sound's agreement before William signed it. She first read it after Puget Sound brought this suit.

William resigned from Puget Sound in October 2010 and began working for U.S. Security Associates Inc. the same month. The next month, he signed an employment agreement with U.S. Security. Kathryn witnessed his signature on the U.S. Security contract. U.S. Security competes with Puget Sound in the Washington security services market.

William told U.S. Security about his noncompete with Puget Sound before signing the new agreement. A U.S. Security officer told William "not to worry about" the noncompete provision. Kathryn discussed potential consequences of the noncompete with William and advised him to get U.S. Security's written confirmation that it would "support him if anything happens"—presumably, if Puget Sound sued him for violating the noncompete. She also saw an e-mail to William from a U.S. Security recruiter indicating U.S. Security would do so.

While working at U.S. Security, William intentionally violated the noncompete provision when he convinced a significant Puget Sound customer,

VersaCold Corporation, to switch to U.S. Security. Puget Sound does not allege that Kathryn had any involvement in the VersaCold transaction.

Puget Sound sued William in August 2011, alleging violation of the Uniform Trade Secrets Act,[4] breach of contract, and tortious interference with business relationships. Puget Sound added parties and claims over the next two years, amending its complaint twice. The third amended complaint added claims for civil conspiracy and "constructive trust" and added Kathryn as a defendant. Puget Sound alleged that Kathryn conspired with William to violate the noncompete and asked that the trial court impose a constructive trust on William's "unfair earnings," including amounts William contributed to his and Kathryn's household expenses. Kathryn and William have a premarital agreement to keep their finances separate. They share a joint bank account where William deposits his paychecks. Kathryn withdraws funds from that account to pay William's contributions to monthly expenses.

Kathryn scheduled a summary judgment hearing for August 30, 2013.[5] Puget Sound's response was due 11 days before the hearing, August 19. Puget Sound filed a response brief on August 16. It then filed a supplemental brief on

---

[4] Ch. 19.108 RCW.
[5] The trial court denied Puget Sound's request to amend its complaint a fourth time, 10 court days before trial.

August 22, without the trial court's permission. Puget Sound appended to the brief an e-mail from William to U.S. Security.[6]

Also on August 22, Kathryn moved to strike portions of Puget Sound's opposition brief. Puget Sound then filed an opposition to the motion to strike, attaching supporting declarations by George Schaeffer, D. James Davis, and Jeff Kirby.

At the summary judgment hearing, the trial court excluded the supplemental brief and the Kirby declaration. Three weeks later, it issued a written order striking the supplemental brief and all three declarations.

The trial court granted Kathryn's motion for summary judgment, dismissing Puget Sound's conspiracy and "constructive trust" claims and dismissing Kathryn as an individual. The trial court noted it was not dismissing the remedy of constructive trust or the claim against the Bates community.

The next week, William filed a bankruptcy petition that automatically stayed this litigation. In an adversary proceeding, the bankruptcy court found that the noncompete agreement was an enforceable contract, that William intentionally breached it, and awarded Puget Sound a nondischargeable

---

[6] Kathryn had seen the e-mail at her deposition. It appears to be from William to a U.S. Security employee and reads in full: "Henry: If you need anything here is an email address I set up through my wife's company. Not much to be said, I hope you are doing well! WB2." It was sent in August 2011, almost a year after William left Puget Sound.

$121,737.61 judgment against William. After the bankruptcy proceeding, Puget Sound appealed the trial court's ruling in this case.

## STANDARD OF REVIEW

This court reviews an order granting summary judgment de novo, performing the same inquiry as the trial court.[7] We will affirm summary judgment where no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.[8] The nonmoving party "must set forth specific facts rebutting the moving party's contentions" and may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value.[9]

## ANALYSIS

### Stricken Evidence and Supplemental Brief

Puget Sound first contends that the trial court erred in striking its supplemental brief and declarations by George Schaeffer, James Davis, and Jeff Kirby. We disagree.

A party responding to a summary judgment motion must "file and serve opposing affidavits, memoranda of law or other documentation not later than 11

---

[7] Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).
[8] Owen, 153 Wn.2d at 787.
[9] Wash. Fed. Sav. v. Klein, 177 Wn. App. 22, 27-28, 311 P.3d 53 (2013).

calendar days before the [summary judgment] hearing."[10] If a responding party cannot timely present "facts essential to" oppose summary judgment, that party may request a continuance by filing an affidavit explaining why it cannot do so.[11]

All four documents were untimely here. As Kathryn's summary judgment hearing was on August 30, Puget Sound had to submit its briefing and evidence by August 19. Puget Sound did not ask for a continuance. Instead, it filed the supplemental brief on August 22, three days late.[12] After Kathryn moved to strike portions of Puget Sound's original brief, Puget Sound attached the three declarations to its opposition to that motion to strike, filed August 27. To the extent Puget Sound submitted the three declarations in opposition to the summary judgment motion, the declarations were eight days late.

When considering whether to strike untimely evidence filed in response to a summary judgment motion, a trial court must first consider on the record the factors identified in Burnet: (1) was the untimeliness willful, (2) will the other party suffer substantial prejudice because of the violation, and (3) would a lesser sanction suffice.[13] This court reviews the trial court's decision for abuse of discretion.[14] If the trial court strikes the evidence without doing a Burnet analysis,

---

[10] CR 56(c).
[11] CR 56(f).
[12] Puget Sound concedes that the brief was untimely.
[13] Burnet, 131 Wn.2d at 494; Keck v. Collins, 184 Wn.2d 358, 368-69, 357 P.3d 1080 (2015).
[14] Keck, 184 Wn.2d at 362.

it abuses its discretion.[15]  This court cannot perform a <u>Burnet</u> analysis when the trial court did not.[16]

Here the trial court did not need to conduct a <u>Burnet</u> analysis because Puget Sound did not submit the challenged declarations in opposition to a summary judgment motion.  It instead submitted these declarations in support of its opposition to Kathryn's motion to strike parts of Puget Sound's summary judgment response.  Puget Sound did not ask to amend its summary judgment response by adding the declarations.  The trial court considered the declarations. for the purpose Puget Sound submitted them.  As the authority Puget Sound offers relates only to evidence submitted in opposition to a summary judgment motion, the trial court did not err in excluding the three declarations without a <u>Burnet</u> analysis.

No <u>Burnet</u> analysis was required before striking the supplemental brief either.  That brief consisted of untimely legal argument, not evidence.  The <u>Burnet</u> line of cases is premised on parties' due process rights to present evidence;[17]  Puget Sound cites no authority applying the <u>Burnet</u> reasoning to

---

[15] <u>Keck</u>, 184 Wn.2d at 362.

[16] <u>Jones v. City of Seattle</u>, 179 Wn.2d 322, 339, 314 P.3d 380 (2013).

[17] <u>See Burnet</u>, 131 Wn.2d at 494; <u>Keck</u>, 184 Wn.2d at 369 ("The 'purpose [of summary judgment] is not to cut litigants off from their right of trial by jury <u>if they really have evidence which they will offer on a trial</u>, it is to carefully test this out, in advance of trial <u>by inquiring and determining whether such evidence exists.</u>'" (alteration in original) (internal quotation marks omitted) (quoting <u>Preston v. Duncan</u>, 55 Wn.2d 678, 683, 349 P.2d 605 (1960))).

untimely argument and offers no persuasive argument why it should. Because the supplemental brief was untimely, the trial court did not abuse its discretion by excluding it.

Civil Conspiracy

Next, Puget Sound challenges the trial court's dismissal of its civil conspiracy claim. Because Puget Sound presented no evidence that Kathryn intended to help her husband violate his noncompete agreement, it did not create a genuine issue of material fact about the alleged conspiracy.

"'Mere suspicion or commonality of interests is insufficient to prove a conspiracy.'"[18] Rather, a plaintiff "must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy."[19] "'[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient.'"[20]

---

[18] All Star Gas, Inc. v. Bechard, 100 Wn. App. 732, 740, 998 P.2d 367 (2000) (quoting Wilson v. State, 84 Wn. App. 332, 351, 929 P.2d 448 (1996)).

[19] All Star Gas, 100 Wn. App. at 740.

[20] All Star Gas, 100 Wn. App. at 740 (alteration in original) (quoting Lewis Pac. Dairymen's Ass'n v. Turner, 50 Wn.2d 762, 772, 314 P.2d 625 (1957)).

Puget Sound relies on Sterling Business Forms, Inc. v. Thorpe,[21] where Division Three found a summary dismissal improper because the record included evidence sufficient for a fact finder to find clear and convincing evidence of a conspiracy. The plaintiff sued several former employees and Schumacher, the president of a client company. The employees had created a rival business using confidential information about Sterling's business and customers. Schumacher loaned the employees money for the new business and helped them obtain bank loans. Evidence showed that Schumacher knew the employees worked as top managers for Sterling and could infer they were soliciting Sterling customers and that Schumacher used Sterling's confidential information to obtain financing.[22]

Kathryn relies on All Star Gas, Inc. v. Bechard,[23] where Division Three affirmed a trial court's decision that two brothers, Rick and Randy, did not conspire to violate Randy's noncompete agreement with the plaintiff. The trial court made an unchallenged finding that the alleged conspirator, Rick, "did not have actual or constructive notice" of the noncompete agreement until the plaintiff sued.[24] Division Three noted that "[n]othing in the record suggests Rick had an unlawful motive or used unlawful means when he agreed to form [a

---

[21] 82 Wn. App. 446, 454, 918 P.2d 531 (1996).
[22] Sterling, 82 Wn. App. at 451-52.
[23] 100 Wn. App. 732, 734, 998 P.2d 367 (2000).
[24] All Star Gas, 100 Wn. App. at 741.

competing company] with Randy" and that there was "no evidence of any agreement between Randy and Rick to conspire."[25]

Puget Sound has not shown a genuine issue of material fact about either mode of civil conspiracy.

Puget Sound points to six facts that it contends satisfy its summary judgment burden when considered in the aggregate: Kathryn used her professional skills to help William negotiate his noncompete agreement; Kathryn recommended that William negotiate protection from U.S. Security; Kathryn witnessed William's signature on the U.S. Security contract; Kathryn toasted two Puget Sound officers at a fundraising event after William falsely told them he was not working in the security business;[26] Kathryn set up an e-mail account for William through her work; and Kathryn benefitted from William's breach through his increased contributions to household expenses.

These facts do not create a fact issue about Kathryn conspiring with William to accomplish an unlawful purpose or a lawful purpose through unlawful means. Kathryn's connection to William's unlawful acts is distinguishable from the alleged conspirators' actions in Sterling and All Star Gas. In those cases, the alleged conspirators took affirmative steps to "combin[e]" with the primary

_____

[25] All Star Gas, 100 Wn. App. at 741.
[26] This fact comes from the Kirby declaration, which the trial court properly struck.

-11-

defendants in violating the agreements, by financing a rival business using the plaintiff's confidential information in Sterling and by forming a business to rival the plaintiff's in All Star Gas.[27] Here, in contrast, the evidence Puget Sound points to is equally consistent with a lawful purpose.

While Puget Sound emphasizes Kathryn's experience with noncompete agreements as a human resources manager, it does not explain how helping William negotiate his contract with Puget Sound could be part of an effort to help him violate that contract later. Instead, that fact allows only the inference that Kathryn knew the noncompete agreement existed.

The evidence that Kathryn helped William set up an e-mail address through her work consists of a two-line e-mail that Puget Sound first attached to its supplemental brief. As discussed above, the trial court properly struck that brief and the e-mail with it. Moreover, William sent the e-mail almost a year after he left Puget Sound and well after the events that Puget Sound asserts constitute a conspiracy. None of the facts Puget Sound introduced could create an inference that Kathryn setting up an e-mail address for her husband was inconsistent with a lawful purpose.

Kathryn witnessing a signature on the U.S. Security contract is also consistent with a lawful purpose. This signature merely acknowledges that the

---

[27] Sterling, 82 Wn. App. at 451-52; All Star Gas, 100 Wn. App. at 734-35.

person signing the document is who the person claims to be; it does not make the witness a party to the document or even show that the witness has read it.[28]

The trial court properly struck the testimony about the incident at the fundraiser, as discussed above. And the intent that Kirby and Puget Sound ascribe to Kathryn raising her glass is, in any case, sheer conjecture.

Kathryn's advice to William to seek U.S. Security's indemnity agreement does not show an unlawful purpose or unlawful means, either. As the trial court noted, "This is a contract dispute." William testified that U.S. Security did not believe the Puget Sound noncompete clause was enforceable. If Kathryn was aware of William's noncompete agreement with Puget Sound, she was also aware that Puget Sound might try to enforce it against William. Kathryn advising him to ask U.S. Security for indemnification does not support an inference that she had an unlawful purpose or unlawful means. Kathryn explained that she made that suggestion because "it's good practice to do for any salesperson when entering in an employment agreement" and that her companies had given such assurances before. While a fact finder could disbelieve Kathryn, Puget Sound presented no alternative evidence from which one could find an unlawful purpose.

---

[28] An "attesting witness" is "[s]omeone who vouches for the authenticity of another's signature by signing an instrument that the other has signed." BLACK'S LAW DICTIONARY 1838 (10th ed. 2014).

Finally, William's contributions to joint expenses shows only that the two spouses agreed, as most spouses do, to share their living expenses. Puget Sound cannot use those contributions to demonstrate an "unlawful purpose" either.

Puget Sound urges this court to consider these facts in the aggregate, but doing so does not make them more persuasive. At most, they demonstrate that Kathryn was aware that William had a noncompete agreement with Puget Sound and advised him to seek protection from U.S. Security should Puget Sound sue him. This does not show that Kathryn intended to help William violate his noncompete agreement.

Likewise, Puget Sound presented no evidence that Kathryn and William made an agreement to accomplish the alleged conspiracy. Puget Sound must present more than a suspicion of an agreement to avoid summary judgment.[29] As Puget Sound has not shown specific, material facts creating an issue about an agreement between Kathryn and William to violate William's noncompete agreement, Puget Sound did not meet this burden.

Unjust Enrichment

Finally, Puget Sound claims that the trial court erred in dismissing its unjust enrichment claim for insufficient pleading. Puget Sound asserts that its

---

[29] See All Star Gas, 100 Wn. App. at 740.

"constructive trust" claim and reference to "unfair earnings" provided Kathryn with enough notice that Puget Sound was claiming unjust enrichment.

Washington courts require a party to give proper notice of a claim to opposing parties in its pleadings through "a 'concise statement of the claim and the relief sought.'"[30] Courts construe pleadings "to do substantial justice,"[31] and even if a claim "'is not a vision of precise pleading'" or is mislabeled, it may still give the notice CR 8 requires.[32] Parties may clarify initial pleadings in the course of summary judgment proceedings.[33]

Unjust enrichment is "an independent basis of substantive liability."[34] A claim for unjust enrichment has three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment."[35] "Enrichment alone will not suffice to invoke the remedial powers of a court of equity. It is critical that the enrichment be unjust both under the

---

[30] Champagne v. Thurston County, 163 Wn.2d 69, 84, 178 P.3d 936 (2008) (quoting Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006)); CR 8(a).

[31] CR 8(f).

[32] Burnet, 131 Wn.2d at 492 (quoting Schoening v. Grays Harbor Cmty. Hosp., 40 Wn. App. 331, 336-37, 698 P.2d 593 (1985)); State v. Adams, 107 Wn.2d 611, 620, 732 P.2d 149 (1987).

[33] Adams, 107 Wn.2d at 620.

[34] Davenport v. Wash. Educ. Ass'n, 147 Wn. App. 704, 725, 197 P.3d 686 (2008).

[35] Young v. Young, 164 Wn.2d 477, 484-85, 191 P.3d 1258 (2008).

circumstances and as between the two parties to the transaction."[36] Thus, to recover for unjust enrichment the plaintiff must plead both unjust retaining of benefits and why an equitable remedy is necessary.[37] It must allege all of the material facts that constitute the gist of the cause of action.[38]

The trial court correctly dismissed Puget Sound's purported unjust enrichment claim. Puget Sound's complaint did not merely mislabel an unjust enrichment claim; it failed to plead facts supporting the elements of this claim. While Puget Sound arguably pleaded the first two elements by alleging William had "unfair earnings" and that Kathryn benefitted from those earnings, its complaint did not plead facts necessary to show an equitable remedy was necessary. Because Puget Sound's claim fails on the merits, we do not consider Kathryn's argument that Puget Sound waived it by not assigning error to the trial court's denial of its motion to amend its complaint.

---

[36] Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wn. App. 719, 732, 741 P.2d 58 (1987).

[37] Hughes v. Chattem, Inc., 818 F. Supp. 2d 1112, 1124-25 (S.D. Ind. 2011).

[38] 66 Am. Jur. 2d Restitution and Implied Contracts § 159 (2016).

CONCLUSION

Because the trial court did not err in striking untimely evidence or briefing,

dismissing the unsupported conspiracy claim, or dismissing the unpleaded unjust

enrichment claim, we affirm.

_Leach, J._

WE CONCUR:

_Trickey, ACJ_          _Appelwick, J_