## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LAURIE M. KITSELMAN, a single woman,

                Appellant,

        v.

DAWN DARINGTON, TAMMY K. BICKNELL;(aka TAMMY K. RAMSAY); BRENDA RAMSAY,

                Respondents.

No. 86859-4-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Laurie Kitselman appeals summary judgment dismissal of her claims alleging common law fraud, civil conspiracy, unconscionability of contract, unjust enrichment, conversion, and intentional infliction of emotional distress. Kitselman and her counsel, Eric Carlson, also appeal an award of attorney fees and costs as sanctions under CR 11 and challenge the amount of the fees. We affirm summary judgment and remand to the trial court to enter appropriate findings in support of the fee award.

I

A

Kitselman inherited real property in Elma, Washington in 2019 (the property). On the property was a manufactured home, a two-bay garage, and a workshop. The property had a mortgage debt of about $54,000. Because of health and financial

difficulties, Kitselman failed to pay the mortgage. The lender sent a notice of default for August 1, 2019 to March 31, 2020, for the amount of $4,451. Kitselman was worried about foreclosure and having nowhere to live.

Kitselman shared her worries with longtime friend, Tammy Bicknell. Bicknell told a friend, Dawn Darington, that she was worried about Kitselman's well-being and that Kitselman failed to pay the mortgage and was interested in selling the house. On September 22 or 23, 2020, Kitselman, Darington, and Bicknell met at the house Bicknell shared with her mother, Brenda Ramsay. Kitselman had been Ramsay's hairdresser for several years. Ramsay was not present at the meeting. Kitselman and Darington came to an oral agreement. Darington recalled the she agreed to buy the property for a dollar and the balance of the mortgage. Kitselman didn't recall the details but knew that a "deal" was made and that the mortgage would be paid. Kitselman also noticed Bicknell's computer monitor showing a real estate estimate of the property of $300,000. There was discussion that Kitselman would live on the property in a remodeled building, referred to by the parties as the garage/workshop/carriage/cottage house (Unit B). Kitselman's understanding was that she would live on the property for the remainder of her life in exchange for Darington paying off the mortgage. Darington agreed to pay $3,000 to Kitselman in advance.

Kitselman and Darington signed a form residential lease agreement (the lease) which provided that Kitselman would reside in "Unit A" until Unit B construction was completed. The term of the lease was from October 1, 2020 until Kitselman's death. The lease provided that Kitselman would pay monthly rent of $1 and that violations of

the tenant rules could result in termination. The tenant rules included rules for use, guests, utilities, nuisance, maintenance, furnishings, and restoration.

On September 29, 2020, Kitselman texted Darington that she "would feel a lot better selling the house for $70,000 if there's a way I could get a couple thousand cash down?? No harm asking. I understand [you're] paying for the [Unit B] to be remodeled."

On November 3, 2020, Kitselman executed a personal representative's deed transferring the property from the estate of her mother to herself. The same day Kitselman quitclaimed the property to Darington for consideration of $54,635.87. The notary acknowledgment attached to the deed does not include Kitselman's name. But notary Janene Petersen, an employee at Bank of the Pacific, submitted an affidavit stating Kitselman signed the quitclaim deed before her on November 3, 2020, and included the entry in her notary log showing Kitselman's signature. Kitselman and Darington also executed a purchase agreement (the agreement) in which Darington agreed to buy the property for one dollar due at closing and the balance of the mortgage to be paid in monthly installments. The sale included major appliances and a generator.

Receipts show two cash payments of $500 each from Darington to Kitselman dated November 9 and 10, 2020. On December 23, 2020, Darington paid the past due money owed on the mortgage in the amount of $10,110.11.

Over the next several months, communications deteriorated between Darington and Kitselman regarding the property, construction delays, and issues related to the personal property of the parties being moved or going missing. The relationship between Darington and Kitselman continued to deteriorate and on August 9, 2021,

-3-

Darington served Kitselman with a notice to vacate for violating the terms of the rental agreement.

During this time Darington became very ill and had difficulties managing the property and navigating the increasingly contentious relationship with Kitselman. As a result, she "begged" her friend Ramsay to take on the mortgage debt. On August 12, 2021, Darington transferred the property by quitclaim deed to Ramsay. The result was Darington gifted Ramsay the equity in the property and Ramsay subsequently paid off the mortgage.

On October 27, 2021, Ramsay served Kitselman an eviction notice for waste, nuisance, and unlawful use under RCW 59.12.030(5).

B

On October 28, 2021, Kitselman filed a complaint in Grays Harbor Superior Court against Darington, Ramsay, and Bicknell (collectively, the defendants). Kitselman alleged common law fraud, civil conspiracy, unconscionability of contracts, unjust enrichment, conversion and civil theft, and intentional infliction of emotional distress. Kitselman sought damages, a judgment voiding all contracts, and restoration of title to the property to Kitselman. The defendants answered and asserted affirmative defenses and counterclaims of malicious prosecution and unlawful detainer. They sought dismissal of Kitselman's claims with prejudice, restitution, termination of tenancy, damages, and judgment quieting title. They also requested attorney fees and costs incurred defending the lawsuit.

Kitselman attempted to schedule the deposition of Ramsay in March 2022. Ramsay, unavailable in March because of a medical procedure, provided available

dates in April 2022. Kitselman did not schedule a deposition in April and instead waited until July to resume attempting to schedule the deposition. On August 17, 2022, Kitselman sent a subpoena for deposition to Ramsay. On August 18, 2022, Bicknell and Ramsay moved for a protective order preventing Ramsay from being orally deposed because of health issues including stress induced seizures and instead, asked that the deposition be conducted by written questions.

Kitselman argued that Ramsay failed to answer prior interrogatories. Kitselman also moved to compel issuance of bank record subpoenas, and for protective orders related to health records and financial records of all parties. And Kitselman filed a notice of intent to subpoena Ramsay's health records. Kitselman asserted that the new information surfaced as a result of Bicknell's marriage dissolution proceedings that occurred while this case was pending. On September 1, 2022, Kitselman moved to compel the defendants to answer deposition questions and interrogatories and to withdraw objections to HIPAA subpoenas. Darington opposed the motion citing failure to comply with CR 26(i) but provided her written answers.

After a hearing on the discovery issues, the trial court ordered that Ramsay be deposed by written interrogatories and that Kitselman could subpoena bank records of Bicknell and Ramsay from September 2020 onwards.

On August 24, 2022, Ramsay and Bicknell moved for summary judgment and dismissal of Kitselman's claims and for an order quieting title to the property. Darington joined the motion. The defendants also sought attorney fees under RCW 4.84.185 for defending a frivolous action.

Kitselman responded and asserted that she would testify and present affidavits of fact once formal discovery was complete and then went on to describe several issues that she "believe[d]" to be contested. Kitselman provided an affidavit and verification stating:

> I have reviewed the allegations in this brief and the case to date, and to those allegations of which I have personal knowledge, as stated, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on information or documents and I believe them to be true.

An "Index of Exhibits" listed a letter from Kitselman's physician and associated medical records, but no such exhibit was included.

At the September 26, 2022 hearing on the motions to compel, the trial court found that Darington and Ramsay adequately answered interrogatories, and that the request for Ramsay's wills or trusts violated privilege and was not relevant. The trial court also found that the motion to compel pertaining to Ramsay's health was frivolous and not relevant.

The same day, the trial court heard argument on the motion for summary judgment and made oral findings and conclusions in favor of the defendants. The trial court found the litigation frivolous and in violation of CR 11. The court asked the defendants to prepare written findings, conclusions, and a form of judgment for presentation on October 17, 2022. After a two-week set over, the written orders were presented and entered by the trial court on October 31, 2022.

The trial court granted the defendants' motion for summary judgment. The trial court concluded that Kitselman's claims either failed to state a valid claim for relief, failed to identify supporting facts, or were frivolous. The trial court also determined fees

-6-

and costs were appropriate under RCW 4.84.185 and that Kitselman's counsel, Eric Carlson, violated CR 11. The trial court dismissed all claims with prejudice, quieted title to the property in Ramsay, and ordered a writ of restitution be issued to terminate Kitselman's tenancy.

While the written order required the defendants to note a separate hearing for entry of judgment on attorney fees, that same day, October 31, 2022, the trial court entered a judgment against Kitselman and Carlson for attorney fees incurred by Bicknell and Ramsay in the amount of $30,210. The trial court entered judgment for attorney fees incurred by Darington in the amount of $14,895.

Kitselman moved to vacate the judgments and submitted a brief on attorney fees. At a presentation hearing on November 7, 2022, the trial court seemed unaware that it had signed the judgments awarding attorney fees on October 31. The court postponed the hearing until November 14, 2022, and granted Kitselman additional time to respond to the attorney fees request. According to the clerk's minutes, at the November 14, 2022 hearing, the trial court stated that it had reviewed Kitselman's brief and disagreed with Kitselman's analysis that "[the defendants] did adequately note costs/rates, they are reasonable and within range for the amount of time asserted and it supports the request."[1] The trial court left in place the October 31, 2022 judgments.

After unsuccessfully moving for reconsideration, Kitselman and Carlson appeal.

---

[1] The report of proceedings for the November 14, 2022 hearing was not provided to this court for review.

II

Kitselman argues the trial court abused its discretion by denying a continuance of summary judgment under CR 56(f). We disagree.

We review a trial court's decision on a continuance in a summary judgment proceeding under CR 56(f) for an abuse of discretion. In re Estate of Fitzgerald, 172 Wn. App. 437, 448, 294 P.3d 720 (2012). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

CR 56(f) provides that a trial court may grant a continuance to permit the nonmoving party time to complete discovery. When the nonmoving party establishes a good reason as to why the discovery cannot be timely obtained, the trial court has a duty to allow "'a reasonable opportunity to make the record complete before ruling on a motion for summary judgment.'" Fitzgerald, 172 Wn. App. at 448 (quoting Lewis v. Bell, 45 Wn. App. 192, 196, 724 P.2d 425 (1986)). But a CR 56(f) continuance is properly denied where "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence, (2) the requesting party does not state what evidence would be established through the additional discovery, or (3) the desired evidence will not raise a genuine issue of material fact." Fitzgerald, 172 Wn. App. at 448.

Kitselman identified the evidence desired as Ramsay's deposition, answers to certain interrogatory questions, her own mental state, and mortgage and bank records. Kitselman did not, however, explain or give a good reason for the delay in obtaining the desired evidence. The record shows the parties e-mailed about scheduling depositions for April and Bicknell and Ramsay provided availability. Kitselman did not explain why

she waited until July to resume scheduling depositions or state what evidence would be established by Ramsay's testimony. Similarly, Kitselman failed to describe what evidence would be established by responses to certain interrogatories.

As for bank records, Kitselman argued that without the records it was impossible for her to respond to summary judgment but failed to explain why or what evidence she expected to receive.[2] Similarly, Kitselman argued that the mortgage records were central to her case to "track who paid what and when" but failed to explain how that evidence would create a genuine issue of material fact as to any of her claims.[3]

Lastly, Kitselman points to her mental and physical health and evidence she did not produce pending protective orders associated with HIPAA. But Kitselman does not provide a good reason for delay in moving for a protective order or state what evidence would be established other than to conclude that Kitselman was a "vulnerable adult at the relevant times."

For these reasons, the trial court did not abuse its discretion by denying Kitselman's motion for a continuance under CR 56(f).

III

Kitselman argues the trial court erred by granting summary judgment for the defendants. But Kitselman fails to provide reasoned argument and authority supporting

---

[2] On appeal, Kitselman points to a durable power of attorney for Ramsay that was produced by the bank and summarily concludes the document proves Bicknell worked in concert with Darington using Ramsay's money. But, those records were not before the trial court on summary judgment and we consider only the evidence and issues before the trial court. RAP 9.12; Winters v. Quality Loan Serv. Corp. of Wash., Inc., 11 Wn. App. 2d 628, 646, 454 P.3d 896 (2019).

[3] On appeal, Kitselman points to records that show Darington made mortgage payments in the amount of $3,929.82 and concludes that Darington materially breached the agreement. The mortgage records were not before the trial court on summary judgment and so we do not consider them. RAP 9.12.

any of her claims and instead spends a portion of her brief simply listing various facts and beliefs. She summarily concludes that the defendants did not meet their burden of proof on summary judgment and the trial court abused its discretion.

We review summary judgment orders de novo and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). We view all facts and reasonable inferences in the light most favorable to the nonmoving party—in this case, Kitselman. Owen, 153 Wn.2d at 787. Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

Summary judgment is subject to a burden-shifting scheme. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then shifts to the nonmoving party to present evidence that an issue of material fact remains. Young, 112 Wn.2d at 225, 770 P.2d 182. The nonmoving party must then present "'specific facts which sufficiently rebut the moving party's contentions'" and create a genuine issue of material fact. Ranger, 164 Wn.2d at 552 (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). "A material fact is one of such nature that it affects the outcome of the litigation." Greater Harbor 2000 v City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997). "If reasonable minds can differ, the question of fact is one for the trier of fact, and summary judgment is not appropriate." Owen, 153 Wn.2d at 788. But, "bare assertions that a

-10-

genuine material issue exists will not defeat a summary judgment motion in the absence of actual evidence." Trimble v. Wash. State Univ., 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

An affidavit opposing summary judgment must (1) be made on the affiant's personal knowledge, (2) be supported by facts admissible in evidence, and (3) show that the affiant is competent to testify to the matters therein. CR 56(e); SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). A party opposing summary judgment must do more than present "ultimate facts" or conclusory statements. SentinelC3, 181 Wn.2d at 140. "An affidavit does not raise a genuine issue of fact unless it sets forth facts evidentiary in nature, i.e., information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion." Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002).

Here, the only affidavit attached to Kitselman's response to summary judgment was her own and it fails to set forth evidentiary facts made on personal knowledge that raise any genuine issues of fact related to any of her claims. We address each of those claims in turn.

A

A claim for common law fraud requires a plaintiff to prove by clear, cogent, and convincing evidence that (1) the defendant made a representation of an existing fact; (2) the representation was material; (3) the representation was false; (4) the defendant knew the representation was false; (5) the defendant intended the plaintiff to act on the representation; (6) the plaintiff did not know the representation as false; (7) the plaintiff relied on the representation; (8) the plaintiff had a right to rely on the truth of

representation; and (9) the plaintiff suffered damage as a result. Guarino v. Interactive Objects, Inc., 122 Wn. App. 95, 126, 86 P.3d 1175 (2004).

Kitselman points to "the amount paid versus the value of the property," but does not argue that the defendants made false representations over the price. Kitselman, in fact, acknowledged that she was aware of the value of the property before entering into agreement with Darington. Kitselman failed to identify specific and admissible facts to support any of the elements of fraud and instead relies on her own beliefs and conclusory statements or points to facts irrelevant to a fraud claim.

B

To establish a civil conspiracy, "a plaintiff must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." Puget Sound Sec. Patrol, Inc. v. Bates, 197 Wn. App. 461, 470, 389 P.3d 709 (2017).

Nothing in the record shows the defendants had an agreement to conspire. And there is no evidence that Darington or Bicknell had an unlawful motive or used unlawful means when Kitselman signed the deed, the agreement, or the lease. Kitselman failed to present specific and admissible facts to support her claim of conspiracy.

C

A contract may be void for substantive unconscionability or procedural unconscionability as described by our Supreme Court:

> A contract is "procedurally unconscionable" when a party with unequal bargaining power lacks a meaningful opportunity to bargain, thus making the end result an adhesion contract. The fact that a contract is an

-12-

> adhesion contract is relevant but not determinative. An adhesion contract is not necessarily procedurally unconscionable. The key inquiry is whether the party lacked a meaningful choice.
>
> . . . .
>
> Substantive unconscionability exists when a provision in the contract is one-sided. In determining if a contractual provision is one-sided or overly harsh, courts have considered whether the provision is shocking to the conscience, monstrously harsh, and exceedingly calloused.

Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 54-55, 57, 470 P.3d 486 (2020).

Kitselman failed to establish a genuine issue as to whether she lacked a meaningful choice. Kitselman points to her emotional and mental state and a lack of consideration, but fails to support her statements with admissible evidence. Instead, the record shows that Kitselman had ample time to reconsider entering into the agreement with Darington. Further, Kitselman received one dollar per month in exchange for the property, a down payment, a lifetime lease, and being free of the mortgage. Nothing in the terms of the agreement or the lease shocks the conscience or is monstrously harsh.

C

"Unjust enrichment allows a party to recover the value of a benefit it has conferred on another party, absent any contractual relationship, if fairness and justice require it." Samra v. Singh, 15 Wn. App. 2d 823, 837, 479 P.3d 713 (2020). "To prevail on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." Singh, 15 Wn. App. 2d at 837.

Kitselman entered into a contractual relationship with Darington and failed to present any admissible facts that Bicknell or Ramsay received an unjust benefit.

Instead, Kitselman merely concluded that the transfer to Ramsay "is a pattern and practice at issue" and that she "did not know who paid what."

D

"'[C]onversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" Westview Invs., Ltd. v. U.S. Bank Nat'l. Ass'n, 133 Wn. App. 835, 852, 138 P.3d 638, 646 (2006) (alteration in original) (quoting Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wn.2d 353, 378, 705 P.2d 1195 (1985)).

Kitselman failed to assert specific and admissible facts that raise a genuine issue that the Defendants willfully interfered with and deprived her of chattel. To the extent Kitselman referred to any appliances or the generator, Kitselman agreed to include major appliances and the generator in the sale to Darington.

E

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." Kloepfel v. Bokor, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). Accordingly, "any claim for intentional or reckless infliction of emotional distress must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Kloepfel, 149 Wn.2d at 196 (quoting Grimsby v. Samson, 85 Wn.2d 52, 59-60, 530 P.2d 291 (1975)).

Kitselman provided no evidence to support any element of her intentional infliction of emotional distress claim. Kitselman provided no evidence that the Defendants intentionally or recklessly acted with the intent to cause Kitselman emotional distress. And, Kitselman's unsupported assertion that she was emotionally fragile is insufficient to establish actual severe emotional distress.

Based on the above, the trial court did not err by granting summary judgment for the defendants.[4]

IV

Kitselman and Carlson argue the trial court abused its discretion by awarding attorney fees as a sanction under CR 11.[5] They also challenge the amount of fees awarded. We address each in turn.

A

This court reviews a trial court's imposition of CR 11 sanctions for abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). "The purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, P.2d 1099 (1992). "CR 11 is not meant to act as a fee shifting mechanism, but rather as a deterrent." MacDonald v. Ford, 80 Wn. App. 877, 891, 912 P.2d 1052 (1996). "In deciding upon a sanction, the

---

[4] Kitselman also points to differences between the trial court's oral rulings and the order on summary judgment. If there is any inconsistency here, we defer to the written order. State v. Skuza, 156 Wn. App. 886, 898, 235 P.3d 842 (2010) ("To the extent its oral rulings conflict with its written order, a written order controls over any apparent inconsistency with the court's earlier oral ruling.").

[5] The trial court also awarded fees based on RCW 4.84.185 which authorizes an award of reasonable attorney fees incurred in opposing a frivolous action advanced without reasonable cause. Kitselman and Carlson do not assign error to or provide argument or authority on fees under this statute and so we do not address the trial court's award of fees under RCW 4.84.185. RAP 10.3.

trial court should impose the least severe sanction necessary to carry out the purpose of the rule." Biggs, 124 Wn.2d at 197. "Should a court decide that the appropriate sanction under CR 11 is an award of attorney fees, it must limit those fees to the amounts reasonably expended in responding to the sanctionable filings." Biggs, 124 Wn.2d at 201.

A trial court imposing CR 11 sanctions must specify the sanctionable conduct in its order. Biggs, 124 Wn.2d at 201. "The court must make a finding that either the claim is not grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, or the paper was filed for an improper purpose." Biggs, 124 Wn.2d at 201. The court must evaluate an attorney's conduct under an objective reasonableness standard by asking whether a reasonable attorney in similar circumstances would believe that the attorney's actions were factually and legally justified. Bryant, 119 Wn.2d at 220-21. We remand for further proceedings where the record is not adequate to review a fee award under CR 11. Biggs, 124 Wn.2d at 202; Just Dirt, Inc. v. Knight Excavating, Inc., 138 Wn. App. 409, 416, 157 P.3d 431 (2007).

In its written order, the trial court explained:

8. Plaintiff's claims are without a basis in law or fact and are frivolous and advanced without reasonable cause and so attorney fees and costs are awarded to the Defendants pursuant to RCW 4.84.185.

9. Plaintiff's Complaint was not well grounded in fact, was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law.

10. Much of Plaintiff's discovery issues raised in its motion to compel were interposed for an improper purpose, including the harassment of Plaintiffs, causing unnecessary delay and needless increase in the cost of litigation.

11. Plaintiff's counsel has violated Civil Rule 11.

While these findings are minimal, Kitselman and Carlson fail to provide reasoned argument or authority to establish that the trial court abused its discretion when it determined the filing of the complaint and motion to compel warranted sanctions. And this court "will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011); see also Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

B

Kitselman and Carlson challenge the reasonableness of the awarded attorney fees and costs.

In Washington, courts use the lodestar calculation to determine reasonable attorney fees. Berryman v. Metcalf, 177 Wn. App. 644, 660, 312 P.3d 745 (2013). The lodestar calculation is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. Berryman, 177 Wn. App. at 660. "Courts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought." Mahler v. Szucs, 135 Wn.2d 398, 434, 957 P.2d 632, 966 P.2d 305 (1998), order corrected on denial of reconsideration, 966 P.2d 305 (Wash. 1998). A trial court's findings must explain its analysis and show how it resolved disputed issues of fact, but it need not deduct hours here and there just to prove it has actively assessed the reasonableness of a fee request. Miller v. Kenny, 180 Wn. App. 772, 823, 325 P.3d 278 (2014). "To withstand appeal, a fee award must be accompanied by findings of fact and conclusions of law to establish a record

-17-

adequate for review." Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 715, 9 P.3d 898 (2000).

We cannot tell from the record whether the trial court took an active role in assessing the reasonableness of the fee award. It also appears to have failed to provide a written basis for the amount. We remand to the trial court for entry of findings and conclusions to support the award of attorney fees.

V

The parties request attorney fees on appeal under RAP 18.1, which authorizes an award where "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." But Kitselman fails to cite to any applicable law and is not in any event the substantially prevailing party on appeal. Kitselman is not entitled to fees on appeal.

The defendants argue they are entitled to attorney fees as sanctions under RAP 18.9 because Kitselman and Carlson's appeal is frivolous. "RAP 18.9(a) permits an appellate court to award a party attorney fees as sanctions, terms, or compensatory damages when the opposing party files a frivolous appellate action." Subcontracting Concepts CT, Inc. v. Manzi, 26 Wn. App. 2d 707, 720, 529 P.3d 440 (2023). Because we reverse in part, we decline to award attorney fees.

We affirm the trial court's summary judgment dismissal of Kitselman's claims. We vacate the portion of the judgments awarding attorney fees and remand to the trial court for entry of findings and conclusions required by a proper lodestar analysis.[6]

---

[6] Kitselman also assigns error to the writ of restitution and the order on motion for reconsideration. Kitselman provides no argument as to either order and "[a] party that offers no argument

_____
Mann, J.

WE CONCUR:

_____        _____
Feldman, J.                                      Coburn, J.

_____

in its opening brief on a claimed assignment of error waives the assignment." <u>Brown v. Vail</u>, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).